Lee Edward STOKES, Jr. *v.* STATE of Arkansas

CR 04-229                                              194 S.W.3d 762

Supreme Court of Arkansas
Opinion delivered October 7, 2004

[Rehearing denied October 28, 2004.]

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Lee Stokes was convicted on one count of capital murder and two counts of first-degree battery. Stokes was sentenced to life in prison without parole for the murder and ten years' imprisonment for each of the battery convictions, to run concurrent with the life sentence. On appeal, Stokes does not challenge the sufficiency of the State's evidence leading to his convictions, but instead argues that the trial court erred in denying his *Batson* challenge to the prosecution's peremptory strike exercised against African-American veniremen.

During voir dire, the State used peremptory challenges to strike two black venirepersons from the jury panel. The defense objected and argued that the State's use of its peremptory challenges was in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). In determining whether such a violation has occurred, we apply a three-step analysis. *Holder v. State*, 354 Ark. 364, 124 S.W.3d 439 (2003), citing *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998). The first step requires the opponent of the peremptory strike to present facts that show a prima facie case of purposeful discrimination. *Id.* at 378, 124 S.W.3d at 449. In *MacKintrush*, this court held that this first step is accomplished by showing the following: (a) the opponent of the strike shows he is a member of an identifiable racial group; (b) the strike is part of a jury-selection process or pattern designed to discriminate; and (c) the strike was used to exclude jurors because of their race. *MacKintrush*, 334 Ark. at 398, 978 S.W.2d at 296. Once a prima facie case of discrimination has been shown, the process moves to

the second step, wherein the burden of producing a racially neutral explanation shifts to the proponent of the strike. *Holder, supra.* If a race-neutral explanation is given, the inquiry proceeds to the third step, in which the trial court must decide whether the opponent of the strike has proven purposeful discrimination. *Id.*

The *Batson* issue first arose after Mr. Jones's name was drawn as a potential juror. The State immediately informed the court that it intended to strike venireman Jones without questioning him because he had previously been on a hung jury. The State's explanation follows:

> THE STATE: We had a murder case here — and, of course, we keep up with all this stuff — where it hung eleven-to-one, and three or four of the jurors called us and said Mr. Jones refused to deliberate. He wouldn't even consider, wasn't going to convict, and so there's no way I'm going to sit him. So I'm going to move to strike him right now based on what I've got.

> But I wanted to let the defense attorney know, it's not out of some arbitrary reason; it's because it was eleven-to-one. Three jurors called us and said this juror re-fused to even deliberate on it. It was a murder case.

After the State announced that it would be striking Jones, Stokes questioned Jones for the record, eliciting his testimony that he had recently served on a criminal jury, that he would be able to resolve the case on the facts and the law, and that he would follow the judge's instructions on the law, even if they conflicted with his personal views. Stokes then made his *Batson* challenge by questioning the reliability of the information concerning Jones's prior jury service in another murder trial[1].

After the trial court ruled that Stokes had made a prima facie showing of racial discrimination, the State proceeded to give its racially-neutral reasons for exercising its strikes. With respect to both venirepersons Brown and Jones, the following colloquy occurred:

> THE DEFENSE: Well, Your Honor, under *Batson*, Mr. Brown and Mr. Jones have both been black or African-

---

[1] Prior to Jones, the State had exercised a peremptory challenge against venireperson Brown.

American jurors, and I think it looks like a pattern of striking blacks. They've used half their strikes on black jurors at this point. And my client is black. And I think that has created a sufficient *prima facie* case that they should give a race-neutral reason —

THE COURT: Well, I don't have to have anything further about the current situation. I have some genuine concerns myself . . . just based upon what I know about the previous situation.

But I would like to hear an explanation for why Mr. Brown was stricken with the very limited number of questions that were asked.

THE STATE: First of all, there are two African-Americans on the jury. We've had four strikes. Only two of our strikes have been African-American. And Mr. Brown has a seventh-grade education, and he seemed kind of quiet — nice, but he just seemed not very responsive, a little quiet. And using a peremptory strike on capital murder, I wanted to be careful, and that's why I did it.

THE COURT: All I asked for was some explanation and I find that to be satisfactory, so I will deny your *Batson* challenge for the record.

The trial court ruled that the reasons given by the State for striking each venireperson were racially neutral and overruled Stoke's *Batson* challenge.

■ In *MacKintrush v. State, supra,* we quoted the United States Supreme Court decision in *Purkett v. Elem,* 514 U.S. 765 (1995) (per curiam), that a race-neutral explanation need not be persuasive or even plausible. 334 Ark. at 398, 978 S.W.2d at 296. Unless discriminatory intent appears in the prosecution's explanation, the reason given will be considered race neutral. *Hernandez v. New York,* 500 U.S. 352, 360 (1991). Furthermore, we will only reverse a trial court's finding on a *Batson* objection when the trial court's decision was clearly against the preponderance of the evidence. *Holder, supra.* In *Pacee v. State,* 306 Ark. 563, 816 S.W.2d 856 (1991), we upheld a prosecutor's peremptory strikes against a *Batson* challenge where potential jurors had served on panels that either acquitted criminal defendants or had resulted in hung juries.

*Id.* at 565-576, 816 S.W.2d at 858-859. The *Pacee* court further held that there was "no reason why [the State's race-neutral] ground, if sufficient, must be developed by question and answer." *Id.* at 567, 816 S.W.2d at 859.

██ ██ In this appeal, Stokes alternatively argues that the trial court erred in denying his *Batson* challenge because the factual basis for the strike was unverifiable by the trial judge as a matter of law. Stokes argues that under Ark. R. Evid. 606(b), which bars jurors from testifying about the jury deliberations, the court could not verify the State's contention that Mr. Jones had been the impetus of a previously hung jury. This argument is raised for the first time on appeal; therefore, it will not be considered because the trial court never had an opportunity to rule on it. *London v. State*, 354 Ark. 313, 125 S.W.3d 813 (2003). Furthermore, an appellant may not change his grounds for objection on appeal. *See Wooten v. State*, 325 Ark. 510, 515, 931 S.W.2d 408, 411 (1996). Given the proof and record before us, the trial court's ruling on the *Batson* issue was unquestionably correct.

Because Stokes was sentenced to life in prison, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to the appellant, and no error has been found. *See* Ark. Sup. Ct. R. 4-3(h).

Affirmed.