Johnny RATLIFF *v.* STATE of Arkansas

CR 04-714                                    199 S.W.3d 79

Supreme Court of Arkansas
Opinion delivered December 2, 2004

*William R. Simpson, Jr.*, Public Defender, by: *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Johnny Ratliff was convicted by a Pulaski County jury of three counts of kidnap-

ping, one count of aggravated robbery, one count of rape and one count of theft of property. Ratliff was sentenced to five terms of life imprisonment for the rape, aggravated robbery, and three kidnappings; he was also sentenced to thirty years' imprisonment for the theft of property. On appeal, Ratliff does not challenge the aggravated robbery, rape, and theft convictions, but he does question the three Class Y kidnapping convictions. He contends that, because he voluntarily released his three victims alive and in what he considers to be a safe place, the charges should have been reduced to Class B kidnappings under Ark. Code Ann. § 5-11-102(b) (Repl. 1997). In his second argument, Ratliff submits that the trial court erred in denying his *Batson* challenge to the prosecution's peremptory strike exercised against an African-American venireperson.

Ratliff first contends that the trial court erred in refusing to direct a verdict in his favor on the grounds that he released his victims in a safe place. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, either direct or circumstantial. *Id.* at 595, 112 S.W.3d at 353. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When reviewing a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

In Arkansas, a person commits the offense of kidnapping by intentionally restraining another person without their consent for the purpose of obtaining a ransom or reward, or for any act to be performed or not performed for their return or release, or for inflicting physical injury upon them including engaging in sexual intercourse, deviate sexual activity, or sexual contact. Ark. Code Ann. § 5-11-102(a)(1) & (a)(4) (Repl. 1997). "Restraint without consent" includes "restraint by physical force, threat, or deception[.]" Ark. Code Ann. § 5-11-101(2) (Repl. 1997). Kidnapping is generally a Class Y felony, unless the defendant can show by a preponderance of the evidence that he voluntarily released the victim alive and in a safe place; in that case, the charge may be reduced to a Class B felony. *See* § 5-11-102(b).

The undisputed evidence presented to the jury is that Ratliff car-jacked April Rice and her two young daughters at a gas station

at around 7:00 p.m. on December 2, 2001, and held them for approximately two hours. Ratliff eventually released Rice and her children in what he contends was a safe place. In her testimony, Rice confirmed that Ratliff did indeed release her and her children near a lighted home. Rice also stated that the residents of the home, the Dougans, immediately allowed them to seek refuge in their home.

In his argument, Ratliff relies on *Griffen v. State*, 2 Ark. App. 145, 617 S.W.2d 21 (1981), for the proposition that, if the place is actually safe, even if only in hindsight, then it is a safe place within the meaning of the B-felony kidnapping statute. In *Griffen*, an adult kidnap victim was released one block from her home. By analogy, Ratliff argues that he released Rice and her children in a similar safe place, i.e., near a home.

The State, however, correctly points out that Ratliff's "safety in hindsight" argument is erroneous, arguing that the present case is more similar to *Mills v. State*, 351 Ark. 523, 95 S.W.3d 796 (2003). In *Mills*, an eleven-year-old girl was kidnapped and left alone on a dirt road during the day to find her way home. The State argues that no clear distinction can be made between an eleven-year-old being released alone on a dirt road during the day and Rice being released with two infant children on a dirt road at night, noting that Ratliff had no assurance that Rice would find the Dougans' home or that they would allow her and her children into their home.

This conclusion is supported by Rice's testimony, wherein she stated that Ratliff released her after pulling off the interstate onto a darkened road. Rice then added that the Dougan house was not visible from inside the car and that Ratliff never left the car; therefore, he could not have known that he was releasing her and her children near safety. Rice further testified that after being released, she jerked both children out of the car, fearing that Ratliff would drive off with one or both of the children. Once freed from the car, Rice positioned herself so that if Ratliff tried to run over her, she would be able to get the children behind a fence and out of the way. Rice additionally related that she did not look around and see the house until after she was sure that Ratliff had pulled away. Rice stated that only after the taillights disappeared did she see the house and run toward it with her children.

Rice's testimony regarding the safety of the release was bolstered by the testimony of Elizabeth Dougan, the woman who took Rice and her children in that night. Dougan testified that she

and her husband lived in Galloway, off Exit 161 from I-40, behind Love's Truck Stop, about a quarter of a mile down Jeter Road. Dougan stated that her home was approximately a football field's length from the road, that the area near the road is very dark at night, and that to get to her house "you have to be coming there because I live on a farm in the country."

The State contends that Ratliff's argument unnecessarily focuses on Dougan's benevolent deeds rather than on Ratliff's malevolent acts. Unlike the adult released on her street in *Griffen, supra*, Rice was not released in an area familiar to her. The State points out that Rice had been beaten, raped, and threatened with death, and she feared Ratliff might try to run over her when she was left alone on the road. The State notes that Rice and her children were not released in the safety of the Dougans' home, but rather on an unfamiliar dark country road. Furthermore, based on both Dougans' and Rice's descriptions of the property, it seems clear that Ratliff appeared to have no more knowledge that there was a house there than Rice did when she first exited the vehicle.

■ Given these facts, the trial court correctly allowed the jury to decide which of the kidnapping felonies applied in the present case. The jury was presented with all of the above-cited evidence and specifically determined that Ratliff did not release Rice and her children in a safe place. The jury thus found Ratliff guilty of Class Y kidnapping. There was substantial evidence to support the jury's finding that Ratliff failed to establish by a preponderance of the evidence that he released his victims in a safe place. Therefore, the Class Y kidnapping convictions are affirmed.

For his second point on appeal, Ratliff contends that the trial court erred in denying his *Batson* challenge to the prosecution's peremptory strike exercised on an African-American venireperson. Though Ratliff, an African-American male, made *Batson* challenges regarding the State's peremptory challenges of four African-American jurors at trial, only the State's striking of venireperson Phyllis Sanders, an African-American female, is at issue in this appeal.

■■ Under *Batson v. Kentucky*, 476 U.S. 79 (1986), a prosecutor in a criminal case may not use his peremptory strikes to exclude jurors solely on the basis of race. *See Wooten v. State,* 351 Ark. 241, 91 S.W.3d 63 (2002). In *Batson,* the United States Supreme Court adopted a three-part test to determine whether a peremptory strike violates the Equal Protection Clause. *See Holder*

*v. State,* 354 Ark. 364, 124 S.W.3d 439 (2003); *MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998). The *Batson* test first questions whether a *prima facie* case of discrimination has been shown. In *MacKintrush,* this court held that this first step is accomplished by showing the following: (a) the opponent of the strike shows he is a member of an identifiable racial group; (b) the strike is part of a jury-selection process or pattern designed to discriminate; and (c) the strike was used to exclude jurors because of their race. *MacKintrush,* 334 Ark. at 398, 978 S.W.2d at 296. Once discrimination is evident, the burden of producing a racially neutral explanation shifts to the proponent of the strike. *Id.* If a race-neutral explanation is given, the inquiry proceeds to the third step, in which the trial court must decide whether the opponent of the strike has proven purposeful discrimination. *Id.*

■■ We will only reverse a trial court's finding on a *Batson* objection when the trial court's decision was clearly against the preponderance of the evidence. *Holder, supra.* Furthermore, in *MacKintrush v. State, supra,* this court quoted the United States Supreme Court decision in *Purkett v. Elem,* 514 U.S. 765 (1995) (*per curiam*), wherein that Court held that a race-neutral explanation need not be persuasive or even plausible. *MacKintrush,* 334 Ark. at 398, 978 S.W.2d at 296. In *Pacee v. State,* 306 Ark. 563, 816 S.W.2d 856 (1991), this court noted that the nonuse of peremptory challenges may be just as relevant as its use.

The State contends that it struck venireperson Sanders for several reasons, including the fact that she was an LPN who worked with elderly people and people with mental diseases or defects. Because Ratliff was raising an insanity defense, the State expressed a fear that Sanders' prior experience with mental disease would color her perceptions. Ratliff, on the other hand, asserts that the strike was part of an effort to limit the number of African-American jurors on the jury, pointing out that the State struck Sanders, a retired military nurse, but did not strike potential venireman Billy Dixon, a white male, who was also retired from the military. *See Ford v. Norris,* 67 F.3d 162 (8th Cir.1995) (a prosecutor's failure to apply a stated reason for striking black jurors to similarly situated white jurors may evince a pretext for excluding jurors solely on the basis of race). However, during voir dire, the State also asserted an additional reason for striking Sanders, which was because she had previously been on a jury that had acquitted a criminal defendant.

■■ Here, the State only used five of its six peremptory strikes. In addition, the jury included at least one African-American. We have held that the best answer the State can have to a charge of discrimination is to point to a jury which has black members. *See Jackson v. State*, 330 Ark. 126, 130, 954 S.W.2d 894, 895 (1997). Moreover, we have accepted as race-neutral the striking of a juror for the reason that the juror had been on a jury that had acquitted a criminal defendant. *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994); *see also Pacee, supra* (holding the State's peremptory strikes against a *Batson* challenge where potential jurors had served on panels that either acquitted criminal defendants or had resulted in hung juries was race neutral). Given the proof and record before us, the trial court's ruling on the *Batson* issue was correct, and we affirm.

In compliance with Ark. Sup.Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Ratliff, and no prejudicial error has been found.