Kenny TRAVIS, Jr. *v.* STATE of Arkansas

CR 07-238                                        269 S.W.3d 341

Supreme Court of Arkansas
Opinion delivered December 6, 2007

622

*Stanley & Thyer, P.A.*, by: *Bill Stanley*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Farhan Khan*, Ass't Att'y Gen., and *Jake H. Jones*, Ass't Att'y Gen., for appellee.

J IM GUNTER, Justice. This appeal arises from an order of the Mississippi County Circuit Court convicting Appellant Kenny Travis, Jr. of the capital murder of J. W. Hall, a Class Y felony and a violation of Ark. Code Ann. § 5-10-101 (Supp. 2003), and aggravated robbery, a Class Y felony and a violation of Ark. Code Ann. § 5-12-103 (Repl. 1997), and sentencing him to life imprisonment without the possibility of parole and ten years' imprisonment, respectively. On appeal, Appellant raises five allegations of error. We affirm.

On June 24, 2005, Appellant, Kevin Ransom, and Acquilla Ramsey went to J. W. Hall's auto dealership under the pretense of showing Hall a VCR tape of his mistress and another man having

sex. The victim told Appellant that he would pay three or four hundred dollars for the tape. However, once the three individuals got there, Ransom (a.k.a. Punch) and Appellant went into the victim's office and asked "where the money was at." Appellant shot the victim in the leg, asked where the safe was, started "tusslin' " with the victim, and shot the victim again in the upper body. Appellant then stated that he shot the victim again in the head. During a car ride to Memphis, Andre Love (a.k.a. Coco) took his cell phone and started recording Appellant's confession to Love. Love testified that he made the recording because "I just knew it was gonna come down to a day like this when we was gonna be in court, and like for some reason now, like he try to put me in it, and this was my way out of it." On the night of the incident, there was a fire that was started outside Appellant's mobile home. Osceola Police Department recovered some of the burned items.

On August 3, 2005, the State filed a felony information in Osceola, charging Appellant with one count of capital murder. An amended felony information was filed on August 5, 2005, in which Appellant was charged with one count of capital murder and one count of aggravated robbery.

On February 7, 2006, Appellant filed a motion for change of venue, claiming that the case was highly publicized in Mississippi County and that Appellant could not receive a fair and impartial trial in Mississippi County. On July 11, 2006, the circuit court granted the motion, transferring the matter to Blytheville for Appellant's trial.

Appellant filed a motion *in limine* on July 31, 2006, moving to prohibit the introduction, reference, or playing of an alleged digital phone recording made by Love of his discussion with Appellant. On August 7, 2006, Appellant also filed a motion *in limine* to exclude a video tape from surveillance cameras at Wal-Mart, as well as video tapes of the statements given by Ramsey and Love, two of the State's primary witnesses in the matter.

The case was submitted to a Mississippi County jury, and the jury found Appellant guilty of capital murder and aggravated robbery and sentenced him to life imprisonment without the possibility of parole, as well as 120 months, in the Arkansas Department of Correction. On August 11, 2006, a judgment and commitment order was entered by the circuit court. From his conviction and sentence, Appellant brings his appeal.

For his first point on appeal, Appellant argues that the circuit court erred in denying his motion for a continuance or for a mistrial. Specifically, Appellant contends that, during Ransom's testimony, Ransom indicated that there was a different copy of a voice recording made by Love, that the prosecution did not make that recording available to him, and that the circuit court abused its discretion by denying Appellant's motions for mistrial or a continuance to allow him to investigate. Appellant asserts that Rules 17.1 and 19.2 of the Arkansas Rules of Criminal Procedure placed an obligation upon the prosecuting attorney to disclose the information of a different recording, and the prosecutor's failure to disclose that information amounted to a discovery violation.

In response, the State argues that the circuit court did not abuse its discretion by denying Appellant's motions for mistrial and continuance, nor did prejudice result from the ruling. Specifically, the State contends that the State complied with the rules of discovery, and even if the State failed to comply with the rules of discovery, Appellant failed to meet his burden of demonstrating how he was prejudiced by the circuit court's denial of his motions for a mistrial and a continuance.

The standard of review for alleged error resulting from denial of a continuance is abuse of discretion. *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007). Absent a showing of prejudice by the defendant, we will not reverse the decision of a trial court. *Id.* Further, we have made it clear that a mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when it cannot be cured by an instruction. *Smith v. State*, 354 Ark. 226, 243, 118 S.W.3d 542, 552 (2003). The trial court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Id.*

We discussed the rules dealing with discovery and the prosecutor's obligation to disclose certain statements to defense counsel in *Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000), where we stated:

> Rule 17.1(a)(ii) of the Arkansas Rules of Criminal Procedure mandates that the prosecutor disclose, upon timely request, "any written or recorded statements and the substance of any oral statements made by the defendant." Rule 19.2 imposes a continuing duty on the prosecutor to disclose this information. In the

event of noncompliance, Rule 19.7 allows the trial judge to order the undisclosed evidence excluded, grant a continuance, or enter such an order as he or she deems proper under the circumstances. The key in determining whether a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Bray v. State*, 322 Ark. 178, 908 S.W.2d 88 (1995).

*Tester*, 342 Ark. at 557, 30 S.W.3d at 104–05. Absent a showing of prejudice, we will not reverse. *Prince v. State*, 304 Ark. 692, 805 S.W.2d 46 (1991).

The circuit court has four options under Rule 19.7 to remedy a violation of the rules: (1) permit discovery, (2) exclude the undisclosed evidence, (3) grant a continuance, or (4) enter an order as the court deems appropriate under the circumstances. *Reed v. State*, 312 Ark. 82, 847 S.W.2d 34 (1993). Under certain circumstances, a continuance to deal with the surprise caused by the State's failure to comply with pretrial discovery requirements may be sufficient to cure any such errors. *See Reed, supra; Hughes v. State*, 264 Ark. 723, 574 S.W.2d 888 (1978). It is within the trial court's discretion to employ any one of the listed sanctions under Rule 19.7(a) or one of its own choosing where there is a failure to disclose. *Renton v. State*, 274 Ark. 87, 622 S.W.2d 171 (1981).

With this precedent in mind, we turn to the present case. At issue are Love's recordings played at trial for the jury. Both Ransom and Officer Mike Grimes testified about those recordings at trial. First, Ransom testified that Officer Grimes and another officer played a microcassette copy of Love's cell-phone recording in which Ransom heard Appellant say that "he was gonna have to knock my [Ransom's] ass off too." Ransom admitted during his testimony that he did not know who made the tape that he heard while in custody. During a bench conference, Appellant questioned the existence of the microcassette.[1] After the bench conference, Appellant's attorney continued to question Ransom about the recording on the microcassette.

Second, Officer Grimes testified that he was able to download Love's recording off his cell phone onto a digital recorder and then onto his laptop computer. The digital recording was played again for the jury, and Officer Grimes testified that the microcas-

---

[1] During this bench conference, the court reporter's primary and back-up recording equipment failed, and as a result, there is no record of the bench conference.

sette copy was played for Ransom during his interview with police. Appellant called a second bench conference during which he argued that the microcassette was not made available to him and he could have sent "it off to an expert to determine if it had been tampered with." Appellant then moved for a mistrial, which the circuit court denied. Officer Grimes later testified that he made a microcassette copy before recording a digital copy. The digital copy was made available to Appellant before trial, but he declined it. The Arkansas State Crime Lab was unable to improve the quality of the recording. Officer Grimes testified that the micro-cassette contained the exact voice recording that was heard by the jury via the digital copy.

Under the circumstances in the present case, the prosecutor disclosed the statement. Officer Grimes testified:

> Yes, the record I have here that is downloaded on my laptop is the same as what you hear on the phone. I recorded it on my laptop just actually by playing it just not in a data cable, just playing it in open air. Just using the digital recorder and just record off of — I think you seen a device yesterday where you use to play it with a speaker phone. Basically with using that type of device just re-corded it digitally on my recorder. Yes, you just take a recorder [with a microcassette] and hold it up there to the speaker. Then with the digital recording device I was able to plug it into my laptop and download it to that. Also, I was able to burn a CD after that point. I also have a recording stored on my hard drive. That's actually put into a wave file, to do that. However, the dictation module software that comes directly from the digital recorder has a clearer version of that. Once it goes to a wave file it loses a little bit of quality.

■ Based upon this testimony, it is clear that the micro-cassette copy, while it was not played for the jury, contained the same recording on both the cell phone and the digital recording on the laptop. Thus, there was only one recording, and it was simply in three different copies: cell phone, microcassette, and digital. Ultimately, Appellant declined the digital copy, which contained the same voice recording that was on the microcassette, and as a result, Appellant is not prejudiced by any alleged failure to dis-close. *See Tester, supra.* Therefore, the circuit court's denial of his motions for mistrial and continuance is affirmed.

For his second point on appeal, Appellant argues that the circuit court erred in denying his *Batson* challenge to the State's

exclusion of jurors. Specifically, Appellant contends that out of thirty-two potential jurors, six were African-American, and the State struck five of them. The State, however, argues that the circuit court did not abuse its discretion by denying Appellant's *Batson* challenges. Specifically, the State contends that Appellant's *Batson* challenges have no merit, and the circuit court's rulings should be upheld.

This court has previously stated our standard of review for *Batson* challenges: "This court will reverse a circuit court's ruling on a *Batson* challenge only when its findings are clearly against the preponderance of the evidence. We further accord some measure of deference to the circuit court, because it is in a superior position to make determinations of juror credibility." *Owens v. State*, 363 Ark. 413, 416, 214 S.W.3d 849, 850-51 (2005).

Under *Batson v. Kentucky*, 476 U.S. 79 (1986), a prosecutor in a criminal case may not use his peremptory strikes to exclude jurors solely on the basis of race. *Ratliff v. State*, 359 Ark. 479, 199 S.W.3d 79 (2004). In determining whether such a violation has occurred, a three-step analysis is applied. *Stokes v. State*, 359 Ark. 94, 194 S.W.3d 762 (2004). The first step requires the opponent of the peremptory strike to present facts that show a prima facie case of purposeful discrimination. *Id.* This first step is accomplished by showing the following: (a) the opponent of the strike shows he is a member of an identifiable racial group; (b) the strike is part of a jury-selection process or pattern designed to discriminate; and (c) the strike was used to exclude jurors because of their race. *Id.* (citing *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998)).

Once a prima-facie case of discrimination has been shown, the process moves to the second step, wherein the burden of producing a racially neutral explanation shifts to the proponent of the strike. *Id.* This explanation, according to *Batson*, must be more than a mere denial of discrimination or an assertion that a shared race would render the challenged juror partial to the one opposing the challenge. *Weston v. State*, 366 Ark. 265, 234 S.W.3d 838 (2006). Under *Purkett v. Elem,* 514 U.S. 765 (1995) (per curiam), this explanation need not be persuasive or even plausible. Indeed, it may be silly or superstitious. The reason will be deemed race neutral "[u]nless a discriminatory intent is inherent in the pros-ecutor's explanation." *Purkett,* 514 U.S. at 768. But, according to *Purkett,* a trial court must not end the *Batson* inquiry at this stage, and, indeed, it is error to do so.

If a race-neutral explanation is given, the inquiry proceeds to the third step, in which the trial court must decide whether the opponent of the strike has proven purposeful discrimination. *Stokes, supra.* We will reverse a trial court's findings on a *Batson* objection when the trial court's decision was clearly against the preponderance of the evidence. *Ratliff, supra.*

■ Appellant made *Batson* challenges to five out of the six African-American jurors during voir dire, but on appeal, he only raises a challenge to the circuit court's ruling on four jurors, namely Gillespie, Williams, Hopkins, and Langel. First, Juror Gillespie stated that she knew Appellant's daughter and that she knew a guilty verdict would be difficult for the daughter. She further stated that she would not want to be on the jury. She was excused by the State, and Appellant raised a *Batson* challenge. The State offered a race-neutral explanation of excluding Juror Gillespie because of her ties with Appellant's daughter. Based upon Juror Williams's answers, the circuit court upheld the strike. For those race-neutral reasons, we affirm the circuit court's ruling.

■ Second, Juror Williams indicated that her son had recently been tried for murder and that she would get quite emotional during Appellant's trial if selected as a venireperson. She claimed that she would try to be fair, but that the State would "have to really show it to me." Further, she testified that she would "[c]ry like a baby" because her "son didn't do it," and she did not "want to say guilty to one's son, you know?" Responding to the *Batson* objection, the State argued that her son had recently been a defendant in a murder trial and that she believed he was not guilty. The circuit court ruled that the explanation was race-neutral, and for those reasons, we agree and will not disturb the circuit court's ruling.

■ Third, Juror Hopkins indicated that she knew Rev. Moses Black, one of Appellant's witnesses. She stated that she would rather not determine who was telling the truth and that she should not judge anybody. She further stated during voir dire that she "would probably say to the rest of the jury, whatever y'all want to do." The State excused her, and Appellant raised a *Batson* challenge. The State argued that she and Rev. Black "wor-ship[ped] together" and that cross-examining a minister with the presence of Juror Hopkins is "not something you look forward to," particularly when the State believed that Rev. Black "knew

exactly what had taken place." Based upon the fact that Juror Williams and Rev. Black worshipped together, the circuit court upheld the strike. For those reasons, we affirm the circuit court's ruling. *See Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005) (upholding a *Batson* challenge when the pastor was to be a witness and the State offered that reason as a race-neutral explanation in response to the *Batson* challenge).

■ Lastly, Juror Langel also indicated that she knew Rev. Black from her church and that he visited her elderly mother. The State excused Juror Langel, and in response to Appellant's *Batson* challenge, the State cited the same reasons as it had given for Juror Hopkins. Additionally, the State was concerned that Juror Langel would give Rev. Black more credibility because of the close ties that he had to her mother. The circuit court found that the State gave a sufficient race-neutral explanation, and for those reasons, we affirm. *See Stenhouse, supra.*

For his third point on appeal, Appellant argues that the circuit court erred in refusing to allow the admission of three taped phone conversations between Acquilla Ramsey, Appellant's girl-friend and co-defendant, and Ann Travis, Appellant's aunt. Specifically, Appellant contends that the circuit court's ruling was in violation of the Arkansas Rules of Evidence 607 and 613 (2007) because Ramsey's statements contained prior inconsistent statements. According to Appellant, the circuit court denied the admission of these taped conversations during an in-chambers discussion because "[w]hen Acquilla Ramsey testified, she admitted she had made the statements to Ann Travis during telephone conversations."

The State responds by arguing that we should decline to address this argument because the in-chambers discussion, in which the circuit court ruled upon this issue, is not contained in the record on appeal. Further, the State asserts that "there is no indication that Appellant has attempted to settle or correct the record to include the unrecorded segments upon which he predicates error." In the alternative, the State contends that the circuit court did not abuse its discretion because Appellant cannot demonstrate prejudice.

With regard to the standard of review for evidentiary rulings, we have said that trial courts have broad discretion and that a trial court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *See Navarro, supra.* In

*Fountain v. State*, 269 Ark. 454, 601 S.W.2d 862 (1980), we stated that all bench conferences and in- chambers conferences should be on the record unless they involve matters unrelated to the current trial, in which case, a note to that effect may be made.

In the present case, Appellant's Exhibits 16, 17, and 18 were proffered into evidence. Counsel for Appellant stated:

> Your Honor, based on our conversation in chambers Defendant proffers tapes which have been identified as proffer 16, 17, and 18 which would have been conversations with Acquilla Ramsey that were played. These tapes contain conversation [sic] with Acquilla Ramsey which the court ruled in chambers they were inadmissible because we didn't offer them for impeachment purposes. She had admitted that she had these conversations.

While it may be possible to glean the circuit court's ruling from counsel's statement, we cannot hazard a guess as to the rationale behind the ruling, nor do we have a record that may contain any objection to it. Additionally, we cannot discern whether Appellant raised the arguments concerning Ark. R. Evid. 605 or 613 before the circuit court. Without such proof in the record, we refuse to reach arguments raised for the first time on appeal. Any such argument is precluded on appeal. *See, e.g., White v. State*, 370 Ark. 284, 259 S.W.3d 410 (2007) (holding that an argument may not be raised for the first time on appeal). For these reasons, we decline to reach the merits of this argument.

For the fourth point on appeal, Appellant argues that the circuit court erred in not allowing him to demonstrate a voice-record recording with Love's cell phone. Specifically, Appellant contends that the circuit court should not have sustained the State's objection to the demonstration. Appellant asserts that the demonstration would show that Love could not have recorded the conversation on any Motorola cell phone because such a recording "would not be identical to the recording made by Mr. Love since the persons were not in the same environment, that being in an automobile." In response, the State argues that Appellant's argument is barred because there was no ruling upon which he predicated error. In the alternative, the State asserts that the circuit court did not abuse its discretion, and if it did, then any alleged error was harmless.

At issue was Appellant's attempt to reenact Love recording on his cell phone Appellant's confession to killing Hall. We have held that the admissibility of demonstrative evidence is a

matter falling within the wide discretion of the trial court. *See Hamilton v. State*, 348 Ark. 532, 74 S.W.3d 615 (2002). Here, a bench conference was conducted to determine whether the demonstrative evidence would be admitted. However, after hearing arguments on the matter, the circuit court stated, "I'll tell you what, Mr. Love is not going anywhere. Let's go on to something else right now, and we'll look at these phones and discuss the variables a little later on." Toward the end of the bench conference, the circuit court further stated, "Well, I still think you need to ask him something else right now, and we'll get to this issue a little later on." Based upon these statements, we hold that Appellant did not obtain a clear ruling from the circuit court on this issue, and as a result, the issue is precluded from appellate view. *See Small v. State*, 371 Ark. 244, 264 S.W.3d 512 (2007).

For his fifth point on appeal, Appellant argues that the circuit court erred in denying his motion *in limine* concerning introduction and reference to the cell phone and voice record of Andre Love. Specifically, Appellant contends that the circuit court "allowed the cell phone to be introduced into evidence even though the State took no steps to establish the integrity of the recording or to establish that the same had not been altered or impaired." The State responds by arguing that Appellant's failure to obtain a ruling precluded appellate review. In the alternative, the State asserts that there was no abuse of discretion, and if there were, then the error was harmless.

In discussing our standard of review for evidentiary rulings, we have said that the trial courts have broad discretion and that a trial court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006).

Appellant makes a chain-of-custody argument. On July 31, 2006, Appellant filed a motion *in limine* in which he stated:

> On July 18, 2006, Defendant and undersigned counsel were allowed to hear what purported to be an audio recording of Defendant discussing the crime in this matter, which recording had allegedly been preserved on phone owned by Andre Love. After discussions with the prosecutor and Mike Grimes of the Arkansas State Police, it was discovered that the audio recording could not be copied for Defendant, although it had been requested. It was further discovered that the recording had allegedly remained on the

phone, which phone had apparently remained in the possession of Andre Love until some two weeks, or so, prior to July 18, 2006, at which time the State of Arkansas purchased a different phone for Mr. Love and took possession of the phone in question.

To date, undersigned counsel and Defendant have been told by the State that it has been unable to download or transfer the recording from the telephone to any other form of media or recording. Defendant objects to the introduction of said evidence inasmuch as the State has not preserved the same so as to establish a proper chain of custody. Mr. Love has a multitude of reasons to alter, modify or change the recording to enure to the determent [sic] of Defendant, Kenny Appellant, inasmuch as he knows that Defendant, Kenny Appellant, has always maintained that Andre Love was involved in the shooting of J.W. Hall and in fact was the shooter. The State, for whatever reason, chose to allow this phone to remain in the hands of non-law enforcement and to be used repeatedly for the course of the better part of a year while not taking proper steps to preserve the integrity of the evidence. There is no way for this court to make a determination as to whether there is a reasonable probability that the integrity of the evidence has not been impaired.

■ Prior to trial, Appellant raised his motion *in limine*, but the circuit court stated, "I have a good idea. We'll cross that bridge when and if we get to it." Appellant's attorney replied, "I agree." However, the cell phone was admitted without objection at trial, and the recording on it was played without objection. We have repeatedly said that failure to obtain a ruling on an issue at the trial court level precludes review on appeal. *See Small, supra.* Here, the trial court provided no ruling on the issue. Thus, we are precluded from reaching the issue on appellate review.

Pursuant to Ark. Sup. Ct. R. 4-3(h) (2007), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Appellant, and no prejudicial error has been found. *See, e.g., Bell v. State,* 371 Ark. 375, 266 S.W.3d 696 (2007).

Affirmed.