2009 Ark. 433

**Robert Lee WILLIAMS Jr. a/k/a/ R.J. Williams, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–356.**

Supreme Court of Arkansas.

Sept. 24, 2009.

*son* challenges to five jurors; and (3) that the circuit court erred in denying his motion in limine. We affirm Williams's convictions and sentence.

Williams does not challenge the sufficiency of the evidence; therefore, only a brief recitation of the facts and evidence is necessary. On the morning of July 15, 2004, James "Booger" Cummings, who was eighty years old, was found dead by his wife in his bed at their home in Prescott, Arkansas. He had suffered a blow to his head and gunshot wounds, |₂and the Cummingses' home had been ransacked. During the investigation of a murder in Arkadelphia, Arkansas, Williams was determined to be a suspect in both crimes and was brought in for questioning. He admitted to being a participant, along with three others, in Mr. Cummings's robbery and death, and he admitted to shooting Mr. Cummings once in the back. Williams was subsequently tried by a jury, and, as already noted, was convicted of capital murder, aggravated robbery, and residential burglary and was sentenced to life imprisonment without parole. He now appeals.

Cathleen V. Compton, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Leaann J. Irvin, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice.

|₁Appellant Robert Lee Williams Jr. a/k/a R.J. Williams, appeals from his convictions for capital murder, residential burglary, and aggravated robbery and his sentence to life imprisonment without parole. He asserts three points on appeal: (1) that the circuit court erred in refusing to allow his parents to testify more fully regarding his childhood and mental condition; (2) that the circuit court erred in denying his *Bat-*

## I. Parents' Testimony

Williams, for his first point on appeal, argues that the circuit court erred in precluding his parents from testifying further regarding his childhood and his mental capabilities. He points to his proffer of the testimony that his mother and father would have given, specifically, that he had been in special resource classes during his schooling, had received disability from Social Security, and was embarrassed about taking medications. Citing one case, he contends that where there is conflicting testimony concerning a defendant's sanity at the time of the offense, the issue is one of fact for the jury to decide. The State responds that Williams's argument is

barred from our consideration due to the fact that it is unsupported by explanation or citation to authority and because it is not apparent from his argument what error followed or what prejudice he suffered by the circuit court's limitation of the testimony. In the alternative, the State avers, the circuit court did not err as Williams did not raise the defense of mental disease or defect, nor did he demonstrate or argue how he was prejudiced |₃by the exclusion of the proffered testimony.

We agree that the issue is not properly presented for our review. Here, Williams asserts that his parents should have been allowed to testify further regarding his mental abilities and his childhood. However, a review of his argument in his brief reveals that he has failed to cite to any authority for this proposition. While Williams does cite to one case, *Teater v. State,* 89 Ark.App. 215, 201 S.W.3d 442 (2005), that case does not support his argument on appeal. In *Teater,* the issue presented to our court of appeals was whether the circuit court erred in refusing to instruct the jury on mental disease or defect. The court of appeals held that the circuit court so erred, as conflicting testimony was presented regarding Teater's lack of capacity. It further observed that

> [m]ental disease or defect is an affirmative defense and the burden rests upon the appellant to prove that he lacked the capacity, as a result of mental disease or defect, to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct. To entitle the appellant to a jury instruction on mental disease or defect, there must be some indication from the evidence that he lacked the appreciation that sane men have of what it is they are doing and of its legal and moral consequences.
>
> Where there is conflicting testimony on the question of a defendant's sanity

at the time of the offense, the issue is a fact question for the jury to decide.

89 Ark.App. at 220, 201 S.W.3d at 445 (internal citations omitted).

Our review of the record reveals that while Williams moved for and was granted a mental evaluation, he did not raise the defense of mental disease or defect in accord with Arkansas Code Annotated § 5–2–304 (Repl.2006). Thus, *Teater* is inapposite. This court has held, even in capital cases, that where the party fails to cite to authority or fails to provide |₄convincing argument, it will not consider the merits of the argument. *See Springs v. State,* 368 Ark. 256, 244 S.W.3d 683 (2006). Because Williams failed to cite this court to any convincing authority for his proposition, we decline to address his argument on this issue.

## II. Batson Challenges

For his second point on appeal, Williams urges that the circuit court erred in denying his *Batson* challenges to five potential jurors: Evans, Pearson, Box, Dixon, and Malone. He contends that the reasons given by the prosecutors for the strikes were not valid and were pretextual. The State counters that the explanations given by prosecutors in response to Williams's challenges were race-neutral and that Williams has failed to demonstrate a discriminatory intent on the prosecutors' part.

We have previously outlined our three-step procedure for making challenges under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under *Batson,*

> a prosecutor in a criminal case may not use his peremptory strikes to exclude jurors solely on the basis of race. *Travis v. State,* 371 Ark. 621, 269 S.W.3d 341 (2007); *Ratliff v. State,* 359 Ark. 479, 199 S.W.3d 79 (2004). In determin-

ing whether such a violation has occurred, a three-step analysis is applied. The first step requires the opponent of the peremptory strike to present facts that show a prima facie case of purposeful discrimination. *Stokes v. State,* 359 Ark. 94, 194 S.W.3d 762 (2004). This first step is accomplished by showing the following: (a) the opponent of the strike shows he is a member of an identifiable racial group; (b) the strike is part of a jury-selection process or pattern designed to discriminate; and (c) the strike was used to exclude jurors because of their race. *Id.* (citing *MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998)).

Once a prima facie case of discrimination has been shown, the process moves to the second step, wherein the burden of producing a racially neutral explanation shifts to the proponent of the strike. *Travis, supra.* This explanation, according to *Batson,* must be more than a mere denial of discrimination or an assertion that a shared race would render the challenged juror partial to the one opposing the challenge. *Weston v. State,* 366 Ark. 265, 234 S.W.3d 848 (2006). The reason will be deemed race neutral "[u]nless a discriminatory intent is inherent in the prosecutor's explanation." *Purkett v. Elem,* 514 U.S. 765, 768 [115 S.Ct. 1769, 131 L.Ed.2d 834] (1995) (per curiam). But, according to *Purkett,* a trial court must not end the *Batson* inquiry at this stage, and, indeed, it is error to do so. If a race-neutral explanation is given, the inquiry proceeds to the third step, in which the trial court must decide whether the opponent of the strike has proven purposeful discrimination. *Travis, supra.* We

will not reverse a trial court's findings on a *Batson* objection unless the trial court's decision was clearly against the preponderance of the evidence. *Ratliff, supra.*

*Jackson v. State,* 375 Ark. 321, 334–35, 290 S.W.3d 574, 583–84 (2009).

Before the circuit court, Williams's *Batson* challenge consisted of the following objection, following the excusal of the five jurors at issue:

> [I]t appears to me that there's no reason other than race for most of the strikes that have been made, so far, by the State.

After hearing arguments from both sides as to each juror, the circuit court then denied Williams's *Batson* challenges without further comment.[1] Assuming that Williams made a prima facie case of racial discrimination, *see Armstrong v. State,* 366 Ark. 105, 233 S.W.3d 627 (2006), we will address each juror separately, as the circuit court did.

### A. Juror Evans

With respect to Juror Evans, the prosecution responded that she attended church with Williams's paternal grandmother and that a number of her responses "were not consistent with the relationship described to the Court[.]" In addition, the prosecutor stated that Juror Evans's failure "to engage the State's attorney or engage the Defendant's attorney with her eye contact ... suggested that she was ... wanting to be on the jury[.]" Williams then responded that Juror Evans's testimony was that her attendance at the same church as

---

1. Counsel for Williams then stated that her *Batson* challenge would likely "morph into a motion for a mistrial because I believe that the State has taken off black jurors for the reason of the color of their skin." The circuit court then stated that it was denying Williams's motion.

Williams's grandmother would not cause any problem with her service as a juror.

■ It is clear from the record that the prosecution provided a race-neutral explanation for its strike of Juror Evans, which was that the prosecutor was concerned about any relationship Juror Evans may have had with Williams's grandmother. This court has held that the State's race-neutral explanation must be more than a mere denial of racial discrimination, but need not be persuasive or even plausible. *See Armstrong, supra.* As we have previously observed, under step three of the *Batson* procedure, the ultimate burden of persuasion that there is a purposeful intent rests with and never shifts from the party opposing the strikes. *See Dickerson v. State,* 363 Ark. 437, 214 S.W.3d 811 (2005). While Williams argued further after the prosecution's race-neutral explanation, the circuit court denied the motion, therein concluding that Williams had not proven purposeful discrimination. We cannot say that the circuit court erred in upholding this strike by the State.

### B. Juror Pearson

■ Regarding Juror Pearson, the prosecution explained that her juror questionnaire and her responses during voir dire indicated that she was employed as a secretary for the Arkansas Department of Health and Human Services and that she was involved with the agency's investigators. The prosecutor continued:

It's been my experience that because they often investigate certain types of acts within those offices, that they can tend to feel like they have a certain amount of experience with regard to these types of allegations or similar types of allegations. The same type of standards of review do not apply, and they can often create issues with the ability to separate their jobs and the

types of things and duties they perform within their job and their job as a juror. They can often provide a type, because of their position, a type of leadership that may not be based within the type of experience that is necessarily good for a jury.

Williams then responded that these facts would "simply make her the foreperson" and that none of her responses caused need for a strike.

Again, it is clear from the record that the prosecution provided a race-neutral explanation for the strike and that Williams did not prove purposeful discrimination. Accordingly, we affirm the circuit court's denial of Williams's *Batson* challenge to Juror Pearson.

### C. Juror Box

■ Williams also made a *Batson* challenge regarding Juror Box. In response, the prosecution asserted that Juror Box had known and worked with Williams's father for years and had been charged with a criminal offense. Williams replied that while Juror Box stated that it would be hard to look Williams's father in the eye if he found his son guilty, he could stand by the verdict if he thought it true. Williams further contended that Juror Box had been exonerated of any crime.

As with Jurors Evans and Pearson, the record clearly reflects that the prosecution provided a race-neutral explanation for its strike of Juror Box. Moreover, the record does not reflect that Williams proved purposeful discrimination. For these reasons, we cannot say that the circuit court erred in denying Williams's *Batson* challenge to Juror Box.

### D. Juror Dixon

■ Here, the prosecutor stated, with regard to Juror Dixon, that he had

watched Juror Dixon while he was being questioned by the court, that Juror Dixon appeared uncomfortable, and that Juror Dixon would not meet his co-counsel's gaze during counsel's voir dire. The prosecutor further stated that Juror Dixon "shook his head at several questions that probably should have either received a neutral or a positive response," and, for these reasons, the prosecution struck him. Williams's defense counsel responded that she did not see any of the actions purportedly seen by the prosecution and that she had not heard anything that would have rendered Juror Box an unfair or partial juror.

Again, the prosecution must merely provide a race-neutral explanation that is more than a mere denial of racial discrimination. *See Armstrong, supra.* With respect to Juror Box, it did so. Because it is clear from the record that Williams did not prove purposeful discrimination, the circuit court's denial of his *Batson* challenge was not clearly against the preponderance of the evidence.

### E. Juror Malone

█ Finally, with respect to Juror Malone, the prosecution stated that the fact that Juror Malone attended church with Williams's grandmother and that she sat next to Juror Evans after lunch was cause for concern. Williams replied that Juror Malone responded that she would have no problem being fair and impartial.

As with the others, the prosecution clearly provided a race-neutral explanation for its peremptory strike of Juror Malone. As Williams failed to prove purposeful discrimination, there was no error by the

circuit court in its ruling pertaining to this juror.

In sum, the prosecution provided race-neutral explanations for each of its strikes challenged by Williams, and Williams failed to prove purposeful discrimination with respect to any juror. In addition, the record reflects that two African–American jurors served on Williams's jury, and one African American served as an alternate. We hold that the circuit court's rulings on each of Williams's *Batson* challenges were not clearly against the preponderance of the evidence.

### III. Motion in Limine

For his final point on appeal, Williams contends that the circuit court erred in denying his motion in limine, which sought to preclude any testimony regarding the Arkadelphia murder, with which he was also charged. Williams contends that even if the evidence was independently relevant, its probative value was substantially outweighed by the danger of unfair prejudice. The State asserts that the circuit court did not err in admitting evidence of the Arkadelphia murder because it was independently relevant to establish motive, intent, plan, preparation, and absence of mistake and was more probative than prejudicial.[2]

In his motion in limine, Williams asserted that any mention of the Arkadelphia murder "would be far more prejudicial than probative." At the hearing on Williams's motion, defense counsel maintained that Williams's motion rested entirely on the argument that evidence regarding the Arkadelphia murder was more prejudicial than probative under Arkansas

---

**2.** The State additionally asserts that any argument by Williams regarding Arkansas Rule of Evidence 404(b) is not preserved for appeal, as Williams's argument before the circuit court on his motion in limine was limited solely to whether the evidence was more probative or prejudicial. The State is correct, and, therefore, our review is limited solely to whether the circuit court erred in denying Williams's motion in limine that evidence of the Arkadelphia murder was more prejudicial than probative.

Rule of Evidence 403. Williams claimed that because he had only been charged with, and was not yet convicted of, the Arkadelphia murder, evidence relating to that murder, if admitted, would be much more prejudicial to him than probative.

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403 (2009). We review a circuit court's ruling under Rule 403 using an abuse-of-discretion standard. *See McCullough v. State,* 2009 Ark. 134, 298 S.W.3d 452.

We have observed that evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *See id.* Nevertheless, the evidence should not be excluded under Rule 403 unless the defendant can show that the evidence lacks probative value in view of the risk of unfair prejudice. *See id.*

Clearly, evidence that Williams had allegedly participated in another murder was prejudicial to him; however, that evidence was also probative. In Williams's statement, which was used as evidence against him at trial, he referred to Ms. Tate, the victim in the Arkadelphia murder, as an "old woman." He further stated that he and one of the other participants in the Cummings murder entered Ms. Tate's home through an unlocked door at night with the intent of stealing her car. According to Williams's statement, Ms. Tate, like Mr. Cummings, was also struck in the head and shot. In both murders, the victims were elderly and were attacked at night in apparent attempts to rob them. The similarities between these crimes thus render the Arkadelphia evidence probative of intent, preparation, plan, and scheme. Considering the broad discretion of the circuit court in weighing the probative nature of the challenged evidence against its prejudicial effect, we cannot say that the circuit court abused its discretion in denying Williams's motion in limine.

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2009), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Williams, and no prejudicial error has been found.

Affirmed.

GUNTER, J., not participating.