Cite as 2022 Ark. 106

# SUPREME COURT OF ARKANSAS

No. CR-21-539

| | |
|---|---|
| ROBERT LEE WILLIAMS, JR.<br>APPELLANT | Opinion Delivered: May 19, 2022 |
| V. | APPEAL FROM THE NEVADA COUNTY CIRCUIT COURT [NO. 50CR-04-92] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE DUNCAN CULPEPPER, JUDGE |
| | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Robert Lee Williams Jr. (a/k/a R.J. Williams) appeals from the sentencing order imposing a life sentence following his resentencing hearing for a capital murder that he committed as a juvenile. For his sole point on appeal, Williams argues that the circuit court clearly erred in imposing the maximum sentence after weighing the factors to be considered pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). We affirm the sentence.

Williams was convicted of capital murder, aggravated robbery, and residential burglary and was sentenced to life imprisonment without parole for the July 15, 2004 early-morning home invasion and shooting death of eighty-year-old James Cummings. Williams was fifteen years old at the time.[1] On direct appeal, this court affirmed. *Williams v. State*, 2009 Ark. 433, 373 S.W.3d 237. Then, in 2012, the Supreme Court of the United States

---

[1]Williams's date of birth is July 21, 1988.

held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. In *Kelley v. Gordon*, 2015 Ark. 277, 465 S.W.3d 842, this court held that the ruling in *Miller* applies retroactively.

Thereafter, in 2016, Williams's sentence was vacated and he was resentenced—without a hearing—to life with the possibility of parole after thirty years pursuant to the Fair Sentencing of Minors Act of 2017 (FSMA). Williams appealed, and this court reversed and remanded for the circuit court to conduct a resentencing hearing. *Williams v. State*, 2019 Ark. 96, at 3, 571 S.W.3d 3, 5; *see also Harris v. State*, 2018 Ark. 179, 547 S.W.3d 64 (holding that the relevant portions of the FSMA did not apply to Harris, whose mandatory sentence of life without parole had been vacated before the passage of the FSMA, and therefore, he was entitled to resentencing pursuant to this court's precedent, during which he could present *Miller* evidence for consideration and face sentencing within the discretionary range for a Class Y felony, which is ten to forty years or life).

Williams's resentencing hearing was held on May 17, 2021, before the same circuit judge who presided over his 2007 trial. Williams waived sentencing by a jury. The circuit court took judicial notice of all testimony from the trial. Williams, Kevin Barton, Kendrick Barton, and Williams's sister, Tekelia Williams, were codefendants. The four went to the victim's house a day or two before the murder but decided not to proceed with the robbery that night because an unexpected vehicle was parked at the house. The victim's wife found him when she returned from work--he had been shot and killed in their bed. Williams was

fifteen years old at the time of the murder, and he had worked for the victim at his produce stand several years before and knew that he kept cash at his house. Tekelia drove the car and stayed with it during the robbery. Williams, Kevin, and Kendrick each had a gun. Williams fired the fatal shot to Cummings's back; Kevin shot him in the hip, but that injury alone likely would have been survivable according to the medical evidence. In addition, Cummings had suffered two blows to the head from a blunt object. Williams became a suspect in the Cummings murder after committing a similar offense in Clark County three weeks later.

At the resentencing hearing, the court heard testimony regarding Williams's numerous disciplinary infractions during his incarceration. Williams had been found guilty of fifty-one "major disciplinaries" and had been in restrictive housing and extended restrictive housing (isolation). The defense called Williams's mother and father, who had divorced in 2000, as witnesses. Carolyn Williams testified that Williams had been well-behaved as a young child but had not done well in school due to a learning disability. He began receiving Social Security benefits for ADHD and "slight mental retardation" at the age of nine. She further testified that they attended church several times a week and she had sent Williams to stay with family members in Mississippi during summer breaks in an attempt to keep him out of trouble. Williams's father testified regarding how upsetting the situation was for him. Williams also testified on his own behalf. Williams and his mother both testified that Williams's older cousin, John Powell, had been a bad influence on him.

Williams testified that the robbery had been Powell's idea and that Powell had provided the guns. After the defense rested, two of Cummings's sons offered victim-impact statements.

At the conclusion of the hearing, the court sentenced Williams to life in prison. A sentencing order was filed on June 1, 2021. At that time, a sentencing-order addendum also was filed. In that addendum, the circuit court noted that, in sentencing Williams to life, it had considered evidence about his family life and his performance in school. It noted the family support that Williams had received throughout trial and resentencing. It considered Social Security records and evaluations completed prior to trial that showed that Williams had an IQ of 59. The court noted, however, that it was the opinion of experts that Williams's IQ was likely higher due to his malingering on the testing. It considered "the numerous educational opportunities" that Williams had availed himself of while incarcerated. The circuit court also considered Williams's repeated refusal while incarcerated to conform his actions to prison rules. It considered the cruelty of the crime, the vulnerability of the victim, and the fact that the murder took place while the victim was in bed asleep. The circuit court found it especially compelling that Williams had planned the crime. In the end, the circuit court considered the "mitigating factors and balanced all such facts with the aggravating factors presented at all pre-trial hearings, at the jury trial, and the resentencing hearing." It gave "due consideration to the Defendant's youth and age-related characteristics, as well as the nature of his crime." Then, in accordance with the FSMA, the court sentenced Williams to life, which means life with the possibility of parole after thirty years. Ark. Code Ann. § 16-93-621(a)(2) (Supp. 2021). This appeal followed.

The parties disagree as to the appropriate standard of review. Williams argues that the sentence should be reviewed for clear error, citing the general standard of review for civil bench trials. *E.g.*, *Sharp v. State*, 350 Ark. 529, 88 S.W.3d 848 (2002) (standard of review for a bench trial is whether the circuit judge's findings were clearly erroneous or clearly against the preponderance of the evidence). The State argues that this court should review the circuit court's sentencing decision for an abuse of discretion. The State cites *Jones v. State*, 2017 Ark. 266, at 4 (decision to run sentences consecutively or concurrently is discretionary with the circuit court and is reviewed for an abuse of discretion) and a Mississippi case, *Booker v. State*, 283 So. 3d 250, 254 (Miss. 2019) (*Miller* resentencing decision is reviewed for an abuse of discretion). Sentencing is an inherently discretionary decision, and we agree with the State that the abuse-of-discretion standard applies. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Collins v. State*, 2019 Ark. 110, at 5, 571 S.W.3d 469, 472.

On appeal, Williams offers his analysis of the *Miller* factors—his age and immaturity, his family home environment, the circumstances of the offense (including his role and the influence of peer pressure), the incapacities of youth that may have placed him at a disadvantage in dealing with the justice system, and the potential for rehabilitation. He argues that the circuit court clearly erred in imposing the maximum sentence at his resentencing after considering the relevant factors. Williams shows that he disagrees with the court's determination of an appropriate sentence, but he fails to demonstrate that the

court acted improvidently, thoughtlessly, or without due consideration. The court's statements from the bench and the sentencing addendum show that the court considered all the evidence in determining that life with the possibility of parole was the appropriate sentence. On this record, we cannot conclude that the circuit court abused its discretion in imposing a life sentence, which under the FSMA means life with the possibility of parole after thirty years.

Because Williams received a sentence of life imprisonment, we have examined the record for all objections, motions, and requests made by either party that were decided adversely to him. *See* Ark. Sup. Ct. R. 4-3(a). No prejudicial error has been found.

Affirmed.

WOMACK and WEBB, JJ., concur without opinion.

*Jeff Harrelson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.