

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–16–383

| | | |
|---|---|---|
| | | Opinion Delivered: March 15, 2017 |
| RODRIC D. COHNS | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT, [NO. 23CR-12-1324] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Rodric D. Cohns was convicted in a jury trial of aggravated robbery and was sentenced to ten years in prison. Trial began twice in this case, with the trial court sua sponte declaring a mistrial in the first trial, and the jury convicting Mr. Cohns after the second trial. Mr. Cohns now appeals, raising two arguments for reversal. First, he argues that the charge against him should have been dismissed because he was twice put in jeopardy for the same offense in violation of Article 2, section 8, of the Arkansas Constitution. Alternatively, Mr. Cohns contends that the trial court erred in denying his motion to suppress his statement made to the victim at the scene of the crime while Mr. Cohns was in police custody because a recording of the statement was not produced at trial. We affirm.

A robbery occurred at a Conway convenience store on the night of December 27, 2012. The perpetrator held a gun on the store clerk, Stephen Bogan, and demanded money. Mr. Bogan grabbed the gun, and a struggle ensued. Mr. Bogan retreated to the office,

locked himself in, and called the police. The perpetrator fled on foot. While the police were still at the scene conducting their investigation, a car driven by Mr. Cohns pulled into the convenience store with a flat tire. Mr. Cohns asked the police for assistance, and during the encounter, the police looked through the windows of appellant's car and saw a gun and a two-toned grey jacket that resembled the jacket worn by the perpetrator as seen on the convenience store's surveillance video. The police suspected that Mr. Cohns had robbed the convenience store and arrested him. After Mr. Cohns was arrested and placed in the back of a patrol car, he had a conversation with the store clerk, and he allegedly apologized to the clerk for committing the robbery. Mr. Cohns filed a pretrial motion to suppress the alleged statement he made to the store clerk, pursuant to Rule 4.7 of the Arkansas Rules of Criminal Procedure, contending that the statement should be suppressed because it was not recorded.

At a pretrial suppression hearing, Officer Jim Barrett testified that he was one of the officers who investigated the convenience-store robbery. He went to the scene that night and talked with Mr. Bogan and watched the surveillance video. Officer Barrett stated that, about twenty minutes after arriving at the convenience store, he observed Mr. Cohns pull into the parking lot with a flat tire and ask for assistance. After noticing that Mr. Cohns matched the description of the person on the surveillance video, and observing what appeared to be incriminating items in Mr. Cohns's vehicle, Officer Barrett and the other officers decided to arrest him.

After Mr. Cohns was given his *Miranda* warnings, he told Officer Barrett that he was not involved in the robbery. The store clerk, Mr. Bogan, subsequently went outside and

identified Mr. Cohns as the perpetrator, stating that he recognized Mr. Cohns's voice. Mr. Cohns then asked to talk to Officer Barrett again, and according to Officer Barrett, Mr. Cohns began to weep and stated that he was trying to get money to get back to Little Rock, that he did not intend to hurt anyone, and that he was sorry he had scared the clerk. Officer Barrett asked Mr. Cohns if he wanted to apologize to the clerk, and he said that he did.

Officer Barrett testified that his patrol car did not have recording equipment so he called in another patrol car that was equipped with a video camera. Mr. Cohns was placed in that patrol car, and a small microphone was placed on Mr. Bogan. Officer Barrett was trying to get a recorded confession from Mr. Cohns. The police attempted to record the ensuing conversation between Mr. Cohns and Mr. Bogan. Officer Barrett overheard the conversation, and he testified that Mr. Cohns apologized to Mr. Bogan. Officer Barrett testified that, inexplicably, the video recording contained only the first few seconds of the conversation between Mr. Cohns and Mr. Bogan, and had failed to record the substance of their conversation and the apology. After the suppression hearing, the trial court entered an order denying appellant's motion to suppress his statement to the store clerk.

At the initial jury trial, a situation arose during defense counsel's cross-examination of Officer Rachel Mistrille, who was one of the investigating officers on the night of the robbery. Appellant's counsel was attempting to establish that the officers' investigation was sloppy. Officer Mistrille testified that she was the officer who took the two-toned grey jacket into custody, and she stated that everything in the pockets of the jacket was removed at the police station. Appellant's counsel then presented the jacket to Officer Mistrille and asked her to go through the pockets. When Officer Mistrille went through the pockets of

the jacket she found a red straw in one of the pockets, which Officer Mistrille said she had never seen before. Appellant's counsel then moved to introduce the straw into evidence, the prosecutor objected, and a bench conference ensued.

During the bench conference, the prosecutor asserted that appellant's counsel had access to the jacket prior to trial, that the prosecutor had never seen the red straw before trial, and that appellant's counsel must have known the straw was there or he would not have asked Officer Mistrille to look through the pockets. The prosecutor stated that he was not necessarily accusing appellant's counsel of putting the straw in the jacket, but he was concerned about the fact that appellant's counsel did not disclose prior to trial that he had discovered new evidence. Appellant's counsel admitted that he had inspected the jacket on the morning before trial and found the red straw in the pocket. Appellant's counsel denied placing the straw in the pocket, and stated that he did not disclose the straw prior to trial as a matter of trial strategy. The trial court suggested that the evidence was so tainted that it was considering declaring a mistrial on its own motion. Appellant's counsel stated that he did not want a mistrial. The prosecutor stated that he would not ask for a mistrial for fear that jeopardy had attached and the State might not be able to retry appellant if a mistrial was declared on the State's motion. The prosecutor stated, however, that a defendant cannot cause his own mistrial and that he was unsure about the effect of the trial court's declaring a mistrial on its own motion. A break was then taken to allow the attorneys to research the issue.

When the bench conference resumed, the prosecutor stated that the State was not requesting a mistrial, but that the trial court was within its discretion to order a mistrial on

its own if it found that there was new evidence that tainted the jury. The prosecutor further indicated that he thought appellant's counsel had planted the straw in the jacket because, immediately before appellant's counsel had possession of the jacket on the morning of trial, one of the prosecutors put his hands in the jacket pockets and the pockets were empty. The prosecutor said that the State would have to determine whether to prosecute appellant's counsel. Appellant's counsel again denied placing the straw in the jacket pocket, and he stated that "there is no way in the world that I can even go forward" due to the prosecutor's threat of criminal charges being brought against him. The trial court found that appellant's counsel had found the straw prior to trial but had failed to disclose it to the State so that its evidentiary value could be explored by the State, and that the prejudicial effect could not be remedied except by ordering a mistrial, which the trial court declared on its own motion.

After the mistrial was declared, Mr. Cohns filed a motion to dismiss, arguing that he had objected to the mistrial and that the double-jeopardy clauses of both the United States and Arkansas Constitutions prohibited the State from prosecuting him again for aggravated robbery. The trial court denied the appellant's motion to dismiss, finding that there was an overruling necessity to declare the mistrial.

At the second jury trial, Mr. Bogan testified about the robbery. He stated that a man had entered the store, handed him money to buy a drink, and pointed a gun at him after he opened the cash register to make the transaction. After a struggle over the gun, Mr. Bogan was able to flee to the office, lock himself inside, and call the police. Mr. Bogan stated that when he encountered Mr. Cohns in police custody in the parking lot later that night, Mr. Cohns's voice sounded like the voice of the person who had committed the robbery.

According to Mr. Bogan, they had a brief conversation and Mr. Cohns apologized to him for threatening his life. After the trial, the jury convicted Mr. Cohns of aggravated robbery.

In this appeal, Mr. Cohns's first argument is that the aggravated-robbery charge should have been dismissed because he was twice put in jeopardy for the same offense. He asserts that he objected to a mistrial during the first proceeding and that a mistrial was unwarranted under the circumstances. Mr. Cohns contends that there was no requirement that he disclose the existence of the red straw to the prosecution prior to trial, and that even had there been such a requirement, an admonition to the jury would have cured any possible prejudice. Mr. Cohns argues that, because there was no overruling necessity to terminate the first trial, the charge against him should have been dismissed, and that the subsequent prosecution resulted in a violation of his constitutional right against double jeopardy.

Article 2, section 8 of the Arkansas Constitution provides that no person shall be twice put in jeopardy of life or liberty for the same offense. Pursuant to Arkansas Code Annotated section 5-1-112(3) (Repl. 2013), a former prosecution is an affirmative defense to a subsequent prosecution for the same offense if the former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn, unless the termination was justified by overruling necessity. The ultimate decision by the trial court, that the defendant's protection against double jeopardy was not violated, is reviewed by the appellate court de novo, with no deference to the trial court's determination. *Shelton v. State*, 2009 Ark. 388, 326 S.W.3d 429.

In this case we need not decide whether there was an overruling necessity to grant a mistrial because it is evident from the record that Mr. Cohns consented to the termination

of the trial. It is true that appellant's counsel initially objected to the granting of a mistrial. However, appellant's counsel subsequently stated that "there is no way in the world that I can go forward" in light of the prosecution's threat of criminal charges against him. The final comment made by appellant's counsel before the trial court decided to declare a mistrial was, "I don't want to say anything else because of the threat of self-incrimination."

The supreme court has long held that a defendant's consent to the termination of the trial can be either express or implied. *Phillips v. State*, 338 Ark. 209, 992 S.W.2d 86 (1999). If the defendant's consent is evident, demonstration of an overruling necessity is not required in order to avoid the affirmative defense of double jeopardy. *Id.* When defense counsel refuses to consent to a mistrial but clearly indicates an unwillingness to continue the trial, the defendant can be said to have consented to discontinuance of the trial. *See People v. Echavarria*, 592 N.W.2d 737 (Mich. App. 1999). Under such circumstances, retrial is permissible under double-jeopardy principles because consent constitutes a waiver of a double-jeopardy claim. *Id.*

The record demonstrates that, although Mr. Cohns's counsel did not agree to a mistrial, he unequivocally stated that he could not go forward with the trial, which evidenced his consent to terminate the proceedings. Therefore, we hold that there was no constitutional double-jeopardy violation and that the trial court committed no error in denying appellant's motion to dismiss.

Mr. Cohns's remaining argument is that the trial court erred in denying his motion to suppress the in-custody statement he gave to the store clerk in the convenience-store

parking lot.  Mr. Cohns relies on Arkansas Rule of Criminal Procedure 4.7, which provides in pertinent part:

> (a) Whenever practical, a custodial interrogation at a jail, police station, or other similar place, should be electronically recorded.
>
> (b)(1) In determining the admissibility of any custodial statement, the court may consider, together with all other relevant evidence and consistent with existing law, whether an electronic recording was made; if not, why not; and whether any recording is substantially accurate and not intentionally altered.
>
> . . . .
>
> (c) An electronic recording must be preserved until the later of:
>
> (1) The date on which the defendant's conviction for any offense relating to the statement is final and all direct and post-conviction proceedings are exhausted, or
>
> (2) The date on which the prosecution for all offenses relating to the statement is barred by law.

Pursuant to Rule 4.7(a), appellant argues that his statement to the store clerk should have been recorded.  Noting that the police in this case did actually take measures to record this conversation, but the recording was not preserved, appellant also argues that subsection (c) of the rule was violated.  Mr. Cohns contends that, given that a recording was made that was either exculpatory or inculpatory and was not preserved as required by law, the trial court erred in failing to suppress the statement.

When we review a trial court's ruling on a motion to suppress a statement, we make an independent determination based on the totality of the circumstances.  *Anderson v. State*, 2011 Ark. 461, 385 S.W.3d 214.  We will reverse the trial court's ruling only if it is clearly against the preponderance of the evidence.  *Id.*

We conclude that the trial court committed no error in denying Mr. Cohns's motion to suppress the statement he made to the store clerk.  Rule 4.7(a) provides that, whenever practical, a recording *should* be made if the interrogation occurred at a jail, police station, or

other similar place. Even if the statement in this case had been taken at a jail or a police station, or other similar place, Rule 4.7(a) does not necessarily *require* a recording as a prerequisite to admissibility under such circumstances, but is simply a consideration for the trial court under subsection (b). More importantly, as found by the trial court in this case, Rule 4.7(a) was not implicated because the statement was taken at a convenience-store parking lot and not at a place contemplated by the rule. Although the police did attempt, unsuccessfully, to record the statement, there was no requirement that they do so. Under these circumstances, we hold that the trial court's refusal to suppress the statement was not clearly against the preponderance of the evidence.

Affirmed.

HARRISON and BROWN, JJ., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.