
# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CR–16–681

| | |
|---|---|
| ROBERT MAURICE HOEY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **OPINION DELIVERED:** APRIL 26, 2017<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-13-151]<br><br>HONORABLE KIRK DOUGLAS JOHNSON, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Robert Maurice Hoey was convicted in the Miller County Circuit Court of possession of more than twenty-five pounds of marijuana with intent to deliver, and he was sentenced to eight years' imprisonment in the Arkansas Department of Correction. On appeal, Hoey contends that the trial court erred by (1) denying his motion to dismiss, thereby violating his right against double jeopardy; (2) denying his motion to suppress; and (3) admitting certain evidence. We affirm.

### I. *Facts*

#### A. Motion to Suppress

Hoey was charged after a traffic stop on Interstate 30 north of Texarkana, Arkansas, resulted in police finding fifty-six pounds of marijuana in the trunk of his car. Hoey filed a motion to suppress alleging that the marijuana was seized in violation of his Fourth Amendment right to be free from unreasonable search and seizure.

SLIP OPINION

At the hearing on Hoey's suppression motion held on October 29, 2014, Arkansas State Police Officer Bernard Pettit testified that he had made the traffic stop because the car Hoey was riding in was following too closely to the car in front of it.[1] Pettit said that, after he had stopped the car, he identified himself to the driver, Harry Taylor, who handed over his license and a one-way car-rental contract from Austin to Philadelphia signed by Hoey as the renter.[2] Taylor was not listed as an additional driver on the contract. Hoey also gave Pettit his license, and Pettit said that he ran a criminal history check on both men and discovered that both had criminal histories. Pettit asked Taylor to step back to Pettit's car with him, and he noticed that Taylor never calmed down, even though he said that drivers will usually do so within a minute or two. Pettit asked Taylor about his trip while Taylor signed the warning Pettit had issued to him. Taylor told Pettit that he and Hoey had taken a flight from Delaware to Austin to visit Taylor's aunt, with whom they had spent the night. However, Taylor could not remember his aunt's name. Pettit said that, based on all he had learned, including his having seen air fresheners, food bags, and several cell phones in the car, he left Taylor in the police car and approached Hoey to obtain his account of the trip. Hoey was nervous and said that he and Taylor had taken a flight from Delaware to Austin to visit Hoey's pregnant girlfriend and that they had spent the night in a hotel.

---

[1] The traffic stop was recorded by a camera on Pettit's patrol car; however, the audio recorder on Pettit's uniform was not working, so there is no sound accompanying the video recording of the stop.

[2] Harry Taylor testified at Hoey's trial that he "took a plea." There is no further indication in the record regarding the specific charge to which Taylor pled.

Pettit said that based on the totality of these indicators, he thought Hoey and Taylor may be involved in criminal activity. He said that Hoey got out of the car, and Pettit became concerned about whether the car contained illegal guns, explosives, or narcotics. Pettit asked Taylor, as the driver of the vehicle, for consent to search the car, and Taylor denied the request. Pettit then asked for Hoey's consent because Hoey had signed the rental agreement. Hoey also declined. Pettit said that he told the men he wanted to search the car for drugs, guns, or explosives and that he would bring a K-9 unit to do a free-air sniff around the vehicle. He said that the closest K-9 unit was in Texarkana. Pettit also called for backup. Pettit said that he indicated to Hoey that he had called for the closest K-9 unit, but that it may take a while for it to get there. Hoey told Pettit that it was not a problem, and Pettit noted in his report that Hoey did not mind waiting.

Pettit said that when the K-9 unit arrived, the dog alerted twice while conducting a free-air sniff around the vehicle. Pettit said that the dog's alert gave the police probable cause to search the car, and Pettit found a black plastic bag in the trunk containing a bale that was later determined to be marijuana. The cell phones were also confiscated from the car, and both men were placed under arrest and Mirandized.

In denying Hoey's motion to suppress the marijuana evidence, the trial court ruled that the police officer had sufficient reasonable suspicion to detain Hoey and Taylor. The trial court stated, "The critical point that needs to be made is that there was a reasonable suspicion to go forward after the conversation back at the car during the process of getting the warning citation signed." The trial court then found that the police dog's alert on the car provided probable cause to conduct a search of the vehicle. The trial court found that,

considering the length of time it took for the K-9 unit to arrive at the scene, Hoey and

Taylor were not delayed an unreasonable amount of time under Arkansas Rule of Criminal

Procedure 3.1.[3]

At Hoey's request, another hearing was held on April 5, 2016, so the parties could

argue the application of certain caselaw to Hoey's motion to suppress. The trial court took

the matter under advisement and issued a letter opinion on May 10, 2016, denying the

suppression motion and finding as follows:

> The factors that provide reasonable suspicion to believe that the Defendant was engaged in criminal activity are numerous:
>
> 1)   Officer observed multiple cell phones in the vehicle which may be used by persons involved in drug trafficking;
> 2)   Officer observed multiple air fresheners in the vehicle which are known to be used to mask the odor of illegal substances in a vehicle;
> 3)   Officer observed fast food trash in the vehicle also common when drugs are being moved by vehicle;
> 4)   The Officer noticed the extreme nervousness displayed by Taylor who had quivering lips and his arms, legs and hands were shaking uncontrollably when he approached the vehicle;
> 5)   The officer noticed that the passenger (Hoey) was shaking and extremely nervous at the time he first approached and throughout the stop as well;
> 6)   Neither Taylor nor Hoey would make eye contact with the officer;
> 7)   Taylor provided a car rental agreement that the officer noted was a one-way rental agreement from Austin to Delaware which was suspicious because the

---

[3] Ark. R. Crim. P. 3.1 (2016) provides in relevant part as follows:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony . . . if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

pair had flown to Austin the afternoon of February 14th and were now stopped in Miller County in the early afternoon of February 15th;

8)      The one-way plane ticket indicated an intent to rent a vehicle to return to Delaware rather than a round-trip ticket which would have been more logical;

9)      The routine traffic search for outstanding warrants returned that both had extensive criminal arrests for Hoey and Taylor;

10)     Taylor could not give name of his aunt who he went to visit and who he said they spent the night with;

11)     Hoey gave completely different story that they flew down to Austin to visit Hoey's pregnant girlfriend;

12)     Hoey said that they spent the night in a hotel contradicting Taylor's version of events that they stayed with his aunt for whom he had no name;

These observed and articulable factors are almost exactly the same factors identified as sufficient to establish reasonable suspicion in *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007).

 . . . .

In this case, the officer had reasonable suspicion based on the totality of the circumstances, accompanied by specific, particularized and articulable reasons indicating that the person may be involved in criminal activity. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001); *Johnson v. State*, 2012 Ark. App. 167, 392 S.W.3d 897 (2012).

. . .

In this case, the officer was alone on an interstate highway miles from Texarkana in a rural setting and had to wait for a Texarkana Arkansas Canine Officer to be called to the scene since a drug dog was unavailable from his troop headquarters in Hope, Arkansas. As it has been recognized repeatedly in federal cases, it is not an unreasonable extension of time to await a drug dog if reasonable suspicion has been developed and if there is no unnecessary delay in seeking the drug dog's presence to conduct the open air sniff.  There is no evidence shown that the officer acted in a dilatory manner to secure the drug dog to the scene of the traffic stop other than Defendants contention that the mere fact that they were detained for over an hour was unreasonable and violated Rule 3.1. Arkansas has approved a thirty seven (37) minute detention while awaiting a drug dog to be summoned. *See Omar v. State*, 90 Ark. App. 436, 262 S.W.3d 195 (2007).

. . . .

In this case, there was no consent to search but there was consent by the Defendant to extend his own detention until the drug dog arrived and conducted its "sniff" which the Court finds is a valid waiver of the fifteen (15) minute rule and the time it took to get the dog to the scene was reasonable under the circumstances.

B. Special Plea of Double Jeopardy

On October 31, 2014, Hoey's trial began, and a jury was selected and sworn. Hoey's counsel presented a motion to exclude evidence that had been provided the week of the trial. The motion was premised on Hoey's motion for discovery filed April 19, 2013, and which had been pending for more than a year. Alternatively, the motion sought a continuance. The trial court ruled that the motion was filed too late to be considered but allowed it to be proffered. Officer Pettit, the State's first witness, testified that he had prepared a report and had a copy of it with him. Hoey's counsel complained to the trial court that she had never received a copy of that report and argued that Hoey was entitled to have received it under the discovery motion filed in April 2013. The State responded that it had not received a copy of the report either. The trial court ruled that there was no prejudice to Hoey because he had been provided an affidavit for an arrest warrant prepared by Officer Battle and which mirrored the information in Officer Pettit's report.

The State then offered that it had provided a lab-submission form to Hoey on the day before the trial. The form was requested by Hoey's counsel but was not in the State's case file. Hoey's counsel claimed that she had included the lab-submission form in the motion to exclude that the trial court had allowed to be proffered. The following colloquy then occurred:

THE COURT:             Counsel, I've never done this but we have progressively gone from Monday until today with matters which were not provided to the defense. Some of it was because the State did not have it and didn't know of its existence. And now I've added some more to it. And so at this point in time, are you still asking for your continuance?

DEFENSE COUNSEL:       Yes, Your Honor. Yes.

| THE COURT: | Is that your motion? |
|---|---|
| DEFENSE COUNSEL: | My motion was to continue it or exclude certain information that wasn't provided. |
| THE COURT: | Okay. My ruling at this point is I'm going to grant the defendant's motion for continuance. However, I don't know how soon this matter will be back and there is all possibility that that time period would be too long to maintain this existing jury. |
| | So I'm going to declare a mistrial and this matter will be reset at a future date. And the reason I'm doing that is not because of one item, but because of a multiplicity of items. |
| | Now for future reference, if it comes back up with me sitting here and we have pretrial on this matter, it's going to all be done on the pretrial and then anything after that unless it's because of an immediacy or something other than production of evidence matters and other type motions, will be considered untimely. |
| DEFENSE COUNSEL: | Yes, Your Honor. |
| THE COURT: | Please bring the jury in please. |

On May 20, 2015, Hoey filed a motion entitled "Special Plea of Double Jeopardy," alleging that the trial court's ruling of a mistrial was based on prosecutorial misconduct. He asked that the State be barred from further prosecution of the case. The State filed a response alleging that the mistrial was for Hoey's benefit, in that his counsel had stated that she needed more time to review the newly provided information. The State claimed that Hoey consented, either expressly or impliedly, by not objecting to the mistrial; therefore, double jeopardy did not attach, citing Arkansas Code Annotated section 5-1-112(3) and several cases, including *Woods v. State*, 287 Ark. 212, 697 S.W.2d 890 (2007). At the hearing on

August 31, 2015, the trial court heard arguments from counsel for both parties and took the issues under advisement, agreeing to reconsider Hoey's suppression motion in light of recent cases.

On September 15, 2015, the trial court signed a letter opinion denying Hoey's double-jeopardy motion and which stated in its conclusion,

> The Court finds that the sequence of events that lead to the mistrial were precipitated initially by the Defendant for not being present at pre-trial hearing to raise any unresolved discovery issues and for any motions to be heard. Instead, the Defendant's Motion to Suppress evidence was filed three days after the pre-trial date had passed. This untimely filing necessitated a hearing on October 29, 2014, on the suppression issue some two days after the jury was selected for this trial. The trial judge clearly believed that all of the discovery problems in trying this case had accumulated to a point where he would grant defendant a continuance so that all discovery issues could be resolved prior to the next trial. The Defendant apparently believed that a continuance was in his best interests since he had persistently sought the same throughout the trial to allow him more time to review the produced discovery documents. Further, when Judge Griffin then stated that he was going to declare a mistrial there was no objection by the Defendant. In fact, no objection was made until almost seven months after the mistrial was granted. Consent to a mistrial is implied if there was no objection and the mistrial was for the benefit of the Defendant. *See Phillips v. State*, 338 Ark. 109, 211, 992 S.W.2d 86, 88 (1999). The State did not achieve an advantage in this case and did not seek a continuance nor a mistrial and was ready to proceed with the trial. In this case, the Defendant was the only party who received any benefit from the continuance or the mistrial much as in the *Woods* decision when discovery had not been provided. *See Woods v. State*, 287 Ark. 212, 697 S.W.2d 890 (1985). The Court finds that there was no bad faith conduct by the judge or prosecutor nor did the continuance and mistrial afford the prosecution a more favorable opportunity to convict the defendant. The public interest affords a prosecutor one full and fair opportunity to present his evidence to an impartial jury which has not been afforded the prosecution in this case. *See Washington v Arizona, supra*. The Court finds that the Defendant sought a continuance which was granted then failed to object to the mistrial when Judge Griffin declared a mistrial sua sponte. Only the defendant benefitted from the mistrial.

### C. Jury Trial

Hoey's jury trial was held on April 26, 2016, and Officer Pettit testified as he did at the original suppression hearing. Special Agent Corwin Battle of the Arkansas State Police

was qualified as an expert witness in computer forensics and mobile–device forensics. He testified that he investigated this case and examined the three telephones found in the rental car. When he was asked to testify about specific text messages he had discovered, Hoey's counsel objected that a proper foundation was not presented because the State could not prove that Hoey was the user of the phone when the text messages were sent or received. Counsel also argued that the messages were dated February 6, and the offense date was February 14. The State responded that the text messages were being presented to show that Hoey was involved in drug trafficking, and the text messages about to be introduced referred to buying and selling drugs on days prior to his taking the trafficking trip. When the trial court told the State to lay its foundation, the State responded that it was not alleging that Hoey sent the messages, but the messages were on the telephone that he admitted was his. The trial court ruled that the State should lay its foundation as to whose phone it was and when the messages were received.

When Officer Battle testified regarding the report he had prepared from the data he received from Apple, Hoey's counsel objected that Officer Battle's report relied on hearsay because she could not question anyone from Apple about its process in extracting information from the Hoey's phone. The trial court asked Officer Battle whether he was accessing what Apple sent or the hard drive that was returned from Apple, and he responded that he was accessing the hard drive that Apple had returned to him. The trial court overruled the objection.

When the State began to ask about specific text messages, the trial court excused the jury and reviewed the messages to determine their relevance and admissibility. The State

submitted text messages that referenced money and marijuana.[4] Hoey's counsel objected

that the messages were hearsay, the State would have no witnesses to give context to them,

and the State had not laid a proper foundation. She also argued that Arkansas Rule of

Evidence 404, which provides that character evidence is not admissible for the purpose of

proving that the person acted in conformity therewith, prevented admission of some of the

messages that were sent after the arrest. The trial court disallowed the messages dated after

the arrest and those so far in advance of the arrest that the trial court considered them to be

too remote.

The State also offered evidence of Google map searches of Austin, Texas, and

internet searches regarding locations of Bank of America, storage buildings, and queries on

rental car agencies. Hoey's counsel objected to the Google searches, arguing that the State

had to prove that Hoey was the person who conducted the searches. The trial court ruled

that a proper foundation had been laid to establish that the phone belonged to Hoey, that

he had access to it, and that he had possession of it. The trial court stated that the

---

[4]The text messages included the following: "Can I get something till my check comes this week, Tuesday?"; "Hit me when you get this."; "Yeah, but I won't be back till Saturday. Is that $300 still good?"; "Hit me up. This is Rob. This is my new number."; "Should be back this time Monday."; "Deposited 500, C U when you get back."; "Is the popcorn reggi?"; "Outta town rite now when I get back probably Monday should be a go."; "Hey big guy, still 300?"; "Wassup unc here's the info 4 me if u can. Robert Hoey acct no. 383011793159. They have one on the 202 by Bestbuy and on 11th St."; "U gotta try dat luke sky walker."; "I got my homey bringing luke sky walker n blue dream u can't be having me set stuff up n not answering your phone."; "This Rob my new number I don't have anything rite now."; and "You can come pick up $200 you don't have to bring nothing if you don't want to if you just give me a half. I will give you the rest on the 15th. Things got tight since I've been working and not moving the greenbeans."

information was more probative than prejudicial and relevant under Rule 404(b) to prove intent, plan, scheme, motive and preparation of drug trafficking.

Officer Randy McAdams with the Texarkana Police Department testified that he is the K-9 officer who conducted the free-air sniff with his dog. He described that his dog gave an alert, he then advised the troopers that the alert was positive for the odor of narcotics, and they started their search. Kaitlin Patton, a forensic chemist with the Arkansas State Crime Lab, testified that she examined the packages found in the trunk of Hoey's car and found that they contained 6.36 kg, 6.22 kg, and 6.28 kg of marijuana.

Hoey's counsel moved for a directed verdict, arguing that the State failed to prove that he was in actual or constructive possession of the marijuana found in the car. The trial court denied the motion. Hoey then presented his case, and Taylor testified that he flew to Austin and that Hoey signed the car-rental agreement. He said that when he was pulled over by Officer Pettit, he was shaking because he was cold. He said that he told the officer that he did not know his aunt's full name because everybody called her "Aunt" or "Nanny" because she is old. He took full responsibility for obtaining the marijuana in Austin and denied that Hoey had any involvement in it. He described wrapping the marijuana with a sheet soaked in ammonia and Saran Wrap to mask the smell. He placed it in an opaque black trash bag and placed it in the trunk without Hoey's knowledge. He said that he took a negotiated plea and was on parole. He said that he had sworn out an affidavit to the prosecutor stating that Hoey had nothing to do with what took place on February 15, 2013. He said Hoey went to Austin to see a lady friend and he had gone to see a family member and some friends while in the process of trying to obtain the marijuana. He admitted on

11

cross-examination that he did not tell the judge when he pled guilty that Hoey did not have anything to do with the incident. Taylor denied that he was upset that Hoey had bonded out of jail in Miller County and he had not. When Hoey's counsel renewed her motion for directed verdict, the trial court denied it.

The jury found Hoey guilty of possession with intent to deliver over twenty-five pounds of marijuana. He was sentenced to eight years' imprisonment and fined $2500. He filed a timely notice of appeal, and this appeal followed.

## II. *Argument*

### A. Double Jeopardy

Article 2, section 8 of the Arkansas Constitution provides that no person shall be twice put in jeopardy of life or liberty for the same offense. Pursuant to Arkansas Code Annotated section 5-1-112(3) (Repl. 2013), a former prosecution is an affirmative defense to a subsequent prosecution for the same offense if the former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn, unless the termination was justified by overruling necessity. Consent is implied if the defendant fails to object to termination and the termination is for the benefit of the defendant. *Woods*, *supra*. If the termination is for the benefit of the State, mere failure to object does not constitute consent. *Id*. The ultimate decision by the trial court that the defendant's protection against double jeopardy was not violated is reviewed by the appellate court de novo, with no deference to the trial court's determination. *Cohns v. State*, 2017 Ark. App. 177, ___ S.W.3d ___.

SLIP OPINION

> The supreme court has long held that a defendant's consent to the termination of the trial can be either express or implied. *Phillips v. State*, 338 Ark. 209, 992 S.W.2d 86 (1999). If the defendant's consent is evident, demonstration of an overruling necessity is not required in order to avoid the affirmative defense of double jeopardy. *Id.* When defense counsel refuses to consent to a mistrial but clearly indicates an unwillingness to continue the trial, the defendant can be said to have consented to discontinuance of the trial. *See People v. Echavarria*, 592 N.W.2d 737 (Mich. App. 1999). Under such circumstances, retrial is permissible under double-jeopardy principles because consent constitutes a waiver of a double-jeopardy claim. *Id.*

*Cohns*, 2017 Ark. App. 177, at 7, ___ S.W. 3d at ___.

Hoey contends that double jeopardy attached when he was first placed on trial on October 31, 2014, because a jury had been selected and sworn, and the State's first witness had begun providing testimony. Hoey argues that, while it has been found that an accused's consent is implied if the accused does not object to the mistrial and the mistrial is for the benefit of the accused, the key qualifier in finding implied consent is that the mistrial was for the benefit of the accused. He contends that, under *Williams v. State*, 371 Ark. 550, 268 S.W.2d 868 (2007), if the mistrial is for the benefit of the State, the failure to object will not imply the consent of the accused.

Hoey claims that the State never argued that a mistrial was a manifest necessity; that the mistrial arose from something that was not within the control of the court or the attorneys; or that the mistrial arose from something that could not have been averted by diligence and care. Instead, the State argued only that Hoey had waived double jeopardy because he did not object to the trial court's sua sponte declaration of a mistrial and that his failure to object constituted implied consent. Hoey claims that is incorrect.

Hoey asserts that he had requested a continuance or that undisclosed evidence be excluded. Therefore, when the trial court declared a mistrial, Hoey contends that it was a

benefit to the State because it had failed to provide evidentiary items to the defense prior to the trial. Hoey argues that he asked for a continuance or alternatively for the evidence to be suppressed before the commencement of the trial. This was denied. However, after the jury had been selected and sworn and the trial court began taking testimony, jeopardy had attached. Hoey maintains that the mistrial was not based on his motion for continuance; it was declared because the jury was being released from its term of service, and a new trial could not be rescheduled with that jury. He contends that the mistrial was for the benefit of the State because it had not exercised diligence in obtaining information from its witnesses and, but for the mistrial, the State would have been faced with having to move forward without the benefit of introducing the evidence.

The State cites *Phillips v. State*, 338 Ark. 209, 992 S.W.2d 86 (1999), where the Arkansas Supreme Court held that the defendant impliedly consented to a mistrial by failing to raise an objection when the trial court sua sponte granted a mistrial in response to the defendant's request to reopen the case to permit examination of a witness that defense counsel had overlooked. The State argues that, as set forth in the facts above, defense counsel responded "yes" to the trial court's sua sponte declaration of a mistrial and did not make an objection. The State contends that this case is similar to *Woods*, *supra*, where consent was not literally stated but the defense was clearly requesting a continuance from the trial court, which was granted; thus, no other interpretation was plausible. *Woods*, 287 Ark. at 216, 697 S.W.2d at 892. We agree. Here, Hoey requested a continuance, and it was granted. Thereafter, the trial court sua sponte declared a mistrial, and Hoey's counsel

acquiesced. Thus, we agree with the State's contention that Hoey expressly consented to the mistrial and affirm the trial court's decision that double jeopardy had not attached.

### B. Motion to Suppress

When reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Wells v. State*, 2017 Ark. App. 174, ___ S.W.3d ___. We defer to the circuit court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id.* We will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Pokatilov v. State*, 2017 Ark. App. 150, ___ S.W.3d ___.

Arkansas Rule of Criminal Procedure 3.1 provides that a law enforcement officer may detain someone who he reasonably suspects is committing a felony for fifteen minutes or "for such time as is reasonable under the circumstances." Ark. R. Crim. P. 3.1. Our criminal rules define "reasonable suspicion" as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1 (2016). Our supreme court has further said that "[w]hether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Laime v. State*, 347 Ark. 142, 155, 60 S.W.3d 464, 473 (2001).

Hoey argues that he was detained prior to Trooper Pettit's development of reasonable suspicion and prior to his decision to call for a canine unit to conduct the free-air sniff of the vehicle. He argues that Taylor had signed the warning citation and Pettit then informed Hoey and Taylor that he had a feeling that there was something illegal in the car, although he did not know what. Hoey contends that a reasonable person would not believe that he was free to go and a seizure or detention had occurred within the meaning of the Fourth Amendment. *Lilley v. State*, 362 Ark. 436, 208 S.W.3d 785 (2005). Hoey contends that Pettit's reasonable suspicion must have been formed prior to the conclusion of the traffic stop in order to further detain them to have a canine unit perform the free-air sniff. *Jackson v. State*, 2013 Ark. 201, 427 S.W.3d 607.

Hoey argues that if reasonable suspicion is absent, any continued detention would be unreasonable. Further, if reasonable suspicion exists, Hoey claims that Rule 3.1 would then apply. Hoey cites *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007), for the proposition that a traffic stop has not been concluded when law enforcement has not returned the vehicle registration, license, ticket, or other documents to the driver, but the legitimate purpose of a traffic stop ends once law enforcement has handed the paperwork and ticket to the driver. In *Jackson*, *supra*, the driver had not yet signed the traffic citation when the canine alerted to narcotics; therefore, the purpose of the traffic stop had not concluded, and additional reasonable suspicion was not required.

Hoey claims that his case is distinguishable from *Jackson* because Taylor had signed the warning citation, and Pettit had received the information on Hoey's and Taylor's criminal history. Hoey argues that everything relating to the traffic offense had been

concluded but for Pettit's returning Taylor's driver's license. Hoey claims that law enforcement may not intentionally hold onto a driver's documents for the purpose of extending the duration of a traffic stop while the officer develops facts to support reasonable suspicion sufficient to justify a warrantless search of the vehicle. Hoey argues that the traffic stop becomes illegal if it is prolonged beyond the time that would be reasonable for its completion. *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). Hoey asserts that holding onto Taylor's driver's license was a pretext to prolong the detention, and the free-air sniff was not a part of the function of the traffic stop.

Hoey also claims that the duration of the stop must be accounted for, citing *United States v. Place*, 462 U.S. 696 (1983) (where a 90-minute detention of defendant's luggage precluded reasonableness in the absence of probable cause). He then argues that the facts relied on by Pettit to give rise to reasonable suspicion were not sufficient under *Lilley*, *supra*.

We hold that it was not against the preponderance of the evidence for the trial court to conclude that Pettit had developed a reasonable suspicion that Hoey was involved in criminal activity before the purpose of the stop concluded. Pettit stated that he considered that both Hoey and Taylor were uncontrollably nervous; they could not stop shaking and would not make eye contact with him; both had prior criminal histories; the duration and explanation each gave of the trip was suspicious; and their accounts of the trip differed. Pettit also testified that he had observed air fresheners, cell phones, and food wrappers in the car they were traveling in, and the rental-car agreement was in Hoey's name, but Taylor was driving. Based on these circumstances, Pettit said that he had a reasonable suspicion

that Hoey was involved in criminal activity. Thus, he reasonably detained Hoey beyond

the time necessary for the initial stop. *E.g.*, *Menne v. State*, 2012 Ark. 37, 386 S.W.3d 451.

We further hold that the length of the detention did not violate Rule 3.1 because

the officer acted diligently in securing the closest available drug dog. *See Wilson v. State*,

2014 Ark. 8. When both Taylor and Hoey declined to consent to a search, Pettit informed

them that he was requesting a canine to conduct a free-air sniff around the vehicle and that

it might take time for the closest K-9 unit to arrive, and Hoey responded that he did not

mind waiting. The closest available K-9 unit arrived in less than an hour. Therefore, the

officer's continued detention of Hoey beyond fifteen minutes was reasonable under the

circumstances to determine the lawfulness of his conduct. *See Sims v. State*, 356 Ark. 507,

157 S.W.3d 530 (2004).

## C. Admission of Evidence

In evidentiary determinations, a trial court has wide discretion, and we do not reverse

a ruling on the admission of evidence absent an abuse of discretion. *Smith v. State*, 354 Ark.

226, 118 S.W.3d 542 (2003). Hoey contends that the trial court erred in allowing the

introduction of several text messages, photos, and internet searches alleged to have been

made by him in violation of Rule 901 of the Arkansas Rules of Evidence.[5] He argues that

---

[5]Ark. R. Evid. 901 (2016) provides in pertinent part as follows:

(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

the proper foundation was not made and that even if the evidence had been admissible, it was more prejudicial than probative.

Hoey contends that *Gulley v. State*, 2012 Ark. 368, 423 S.W.3d 569, requires that a proponent of the admission of electronic evidence provide sufficient evidence to corroborate authorship or to authenticate the evidence prior to admission. Hoey argues that in *Gulley*, the authenticity of the evidence was established not just by a showing that the phone belonged to the defendant, but was also corroborated by other witnesses as to the text exchanges and to testimony that the defendant had taken actions consistent with some of the text messages. He also cites *Todd v. State*, 2012 Ark. App. 626, 425 S.W.3d 25, where the authenticity of chat-room logs was confirmed by the defendant's behavior that was consistent with the chat logs and the testimony of a law enforcement officer that the contents were accurate representations of the chat-room conversations he had with the defendant.

Hoey argues that the State did not offer any evidence that he had authored any of the text messages or proffer any evidence that would show that the messages, photos, and internet searches had any characteristics that would be distinctive to Hoey. He argues that before the State may use data pulled from a mobile device to deprive a person of liberty, more is needed than a connection between the ownership of the device and the accused.

---

(1) Testimony of Witness With Knowledge. Testimony of a witness with knowledge that a matter is what it is claimed to be.

. . . .

(4) Distinctive Characteristics and the Like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

Hoey also contends that the electronic evidence was admitted in violation of Rule 404 of the Arkansas Rules of Evidence.[6] Hoey argues that the State introduced several text messages which referenced a bank account number, messages that used various terms that a law enforcement officer testified to be slang terms for marijuana, and other miscellaneous messages. Hoey contends that, even if taken at face value, there was no showing that the messages were related to the incident Hoey was charged with, nor did they illustrate any motive, preparation, or plan. Therefore, he claims that the admission of the electronic evidence prejudiced him in that it was presented as evidence for no other purpose than to implicate him as someone who used or dealt with marijuana in unrelated incidents and so was of the character of someone who would commit the offense charged.

---

[6]Ark. R. Evid. 404 (2016) provides as follows:

(a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
(2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
(3) Character of Witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.
(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Officer Battle testified that Hoey claimed ownership of two cellular phones that were taken from him by Pettit. One was a Samsung flip phone and the other was an Apple iPhone. Search warrants were obtained and an extraction report was produced from the Samsung phone after its content had been dumped. The content retrieved from the phone included call log records, text messages, and data files that included audio, images, and text files. A similar data report was also produced from the Apple iPhone. Battle had knowledge that the phones belonged to Hoey and that the extraction reports were produced from Hoey's phones. Thus, his testimony was sufficient to authenticate the electronic evidence under Rule 901(b)(1).

Further, Rule 404(b) evidence may be admissible for other purposes other than to prove the character of a person in order to show that he acted in conformity therewith, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Phavixay v. State*, 373 Ark. 168, 282 S.W.3d 795 (2008). The standard of review of admission of Rule 404(b) evidence is whether the trial court acted with an abuse of discretion. *Id*. Hoey was charged with possession of a controlled substance with purpose to deliver. The extraction reports of his phones revealed messages, dated less than two weeks before the traffic stop, that made references to marijuana. The reports also revealed searches for storage, car rentals, cheap flights, what transactions are reported to the IRS by banks, and information on reloadable prepaid cards. This information supported the State's theory that Hoey was involved in a scheme of drug trafficking. Thus, the trial court committed no abuse of discretion in admitting the evidence.

Affirmed.

GRUBER, C.J., agrees.

VAUGHT, J., concurs.

**LARRY D. VAUGHT, Judge, concurring.** I agree with and join the majority's analysis of Hoey's second and third points on appeal, which challenged the length of his detention during the traffic stop and the admission of evidence retrieved from his cellular phone. I write separately as to Hoey's argument that his conviction violated his federal and state constitutional protections against double jeopardy.

As discussed in the majority's opinion, our resolution of Hoey's double-jeopardy argument hinges on whether the mistrial declared in this case was for his benefit or the State's benefit. In *Phillips v. State*, the Arkansas Supreme Court explained:

> We have long held that a defendant's consent to the termination of the trial can be either express or implied. If the defendant's consent is evident, demonstration of an overruling necessity is not required in order to avoid the affirmative defense of double jeopardy. *Whitmore v. State*, 43 Ark. 271 (1884). We have found implied consent in circumstances where the mistrial is declared for the benefit of the defendant and the defendant does not object. *Rowlins v. State*, 319 Ark. 323, 891 S.W.2d 56 (1995); *Woods v. State*, 287 Ark. 212, 697 S.W.2d 890 (1985); *Burnett v. State*, 76 Ark. 295, 88 S.W. 956 (1905).

*Phillips*, 338 Ark. 209, 212, 992 S.W.2d 86, 88–89 (1999).

Therefore, under the clear language of *Phillips*, if the mistrial was for the benefit of the State, Hoey's lack of an objection would not constitute implied consent, and we would reverse, but if the mistrial is deemed to be for Hoey's benefit, his failure to object effectively waived his ability to raise a double-jeopardy defense at the second trial. The facts presented in this case demonstrate that, while Hoey is the party that requested the continuance, it was based on the State's failure to provide requested discovery. The court then sua sponte declared a mistrial

based on its inability to reschedule the trial within a reasonable period of time to allow the already selected jury to continue hearing the case.

I view the continuance as a benefit to the State, because it was a result of the State's violation of the Rules of Criminal Procedure, and I view the subsequent mistrial as either a continuation of that benefit to the State or, more accurately, a benefit to the court's own calendar. Either way, neither the continuance nor the mistrial provided Hoey with any benefit, other than the rights to which he was already entitled under the rules.

However, in *Woods v. State*, 287 Ark. 212, 213, 697 S.W.2d 890, 890 (1985), the Arkansas Supreme Court had a very different interpretation of a similar issue. In *Woods*, a jury was selected and sworn in, but before testimony began, Woods's attorneys discovered that the prosecution had taken a statement a codefendant but had not furnished it to Woods's counsel as required by Rule 17.1 of the Arkansas Rules of Criminal Procedure. "A continuance was granted and the jury was discharged." *Woods*, 287 Ark. at 213, 697 S.W.2d at 890. In *Woods*, as in the present case, the circuit court clearly agreed that the State was required to have disclosed certain evidence to the defense and had not done so. The Arkansas Supreme Court held that because the defense had requested a continuance on the basis of not having been provided the evidence, the mistrial that ultimately resulted from the court's granting that continuance was for the defendant's benefit because it was "obviously granted to enable the defense to adequately prepare for trial." *Id.*, 697 S.W.2d at 890. The court therefore held that, by not objecting, Woods had impliedly consented to the mistrial and could not subsequently assert a double-jeopardy defense.

*Woods* is directly on point and therefore mandates the outcome of the present case, but I write separately to encourage the Arkansas Supreme Court to revisit this issue. Its interpretation that a mistrial that stems directly from the prosecution's wrongful conduct is somehow "for the benefit of the defendant" is unjust and unreasonable. A continuance under such circumstances is only "for the benefit of the defendant" in the sense that it is the mechanism by which he may obtain the very rights already guaranteed to him by our Rules of Criminal Procedure.

The benefit of being able to prepare for trial with access to the State's evidence is constitutionally guaranteed. In *Lee v. State*, 340 Ark. 504, 511, 11 S.W.3d 553, 557 (2000), the Arkansas Supreme Court recognized that, in *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Bagley*, 473 U.S. 667 (1985), the United States Supreme Court held that the prosecution's suppression of evidence violates the defendant's Due Process rights. Our rules of criminal procedure reflect this and require timely disclosure of such evidence upon request. In *Figueroa v. State*, 2016 Ark. App. 30, at 2, 480 S.W.3d 888, 890, we explained that timely disclosure under Rule 17.1 requires disclosure of the evidence "in sufficient time to permit the defense to make beneficial use of it." The circuit court has four options under Rule 19.7(a) to remedy a violation of the discovery rules in criminal cases: (1) permit discovery, (2) exclude the undisclosed evidence, (3) grant a continuance, or (4) enter an order as the court deems appropriate under the circumstances. *Travis v. State*, 371 Ark. 621, 626, 269 S.W.3d 341, 345 (2007) (citing *Reed v. State*, 312 Ark. 82, 847 S.W.2d 34 (1993)). "Under certain circumstances, a continuance to deal with the surprise caused by the State's failure to comply with pretrial discovery requirements may be sufficient to cure any such errors." *Id.*, 269 S.W.3d at 345;

*Hughes v. State*, 264 Ark. 723, 574 S.W.2d 888 (1978). It is within the trial court's discretion to employ any one of the listed sanctions under Rule 19.7(a) or one of its own choosing where there is a failure to disclose. *Travis*, 371 Ark. at 626, 269 S.W.3d at 345; *Renton v. State*, 274 Ark. 87, 622 S.W.2d 171 (1981). In addition to the remedies provided under Rule 19.7(a), Rule 19.7(b) allows the court to impose sanctions for willful violations.

Clearly, the law recognizes the importance of a defendant's right to full and timely discovery, and our rules of criminal procedure provide guidance for how that discovery is to be conducted and the remedies available to a defendant when discovery is not provided. And yet, when a defendant seeks recourse under Rule 19.7 for the State's violation of its discovery obligations, our supreme court has inexplicably deemed any resulting mistrial to be "for the benefit of the defendant." Such a rule places on that defendant the burden of having to object to any mistrial that might result from such a continuance or inadvertently be deemed to have waived his ability to raise double jeopardy as defense in a subsequent prosecution. Further, such an objection may not always be feasible. For example, in *Woods*, the defense requested and was granted a continuance, during which the jury was ultimately discharged. When the second trial was set to begin with the selection of a new jury, Woods raised double jeopardy as a defense. However, no mistrial was officially declared. The supreme court explained that "[t]he discharging of the original jury and the selection of another gave the continuance the practical effect of a mistrial, *see Daniels v. State*, 12 Ark. App. 251, 674 S.W.2d 949 (1984), and that is not a point of contention in this case." *Woods*, 287 Ark. at 213, 697 S.W.2d at 891. So to what, then, would Woods have had to object in order to preserve his double-jeopardy defense? According to the supreme court, he should have objected to the court's granting of

25

his own motion for a continuance, which is absurd. *Id.* at 215, 697 S.W.2d at 892. ("[T]he *continuance* was for the benefit of the defense and was granted without objection, and in that circumstance consent will be implied.") (emphasis added).

The rule established in *Woods* effectively punishes a criminal defendant for seeking the very remedy to which he is entitled under Rule 19.7(a). By simply requesting a continuance, as is expressly authorized under the rule, he risks waiving his state and federal constitutional protections against double jeopardy. I do not believe that a criminal defendant should be required to trade one constitutional right for another; he should not be forced to relinquish his double-jeopardy defense in order to demand the due process already owed to him. Moreover, we should be very careful about establishing precedents that effectively reward the State for violating the Rules of Criminal Procedure. I therefore respectfully suggest that the Arkansas Supreme Court revisit its holding in *Woods* and clarify that a criminal defendant who seeks a continuance under Rule 19.7 due to the State's failure to provide discovery does not, by so doing, inherently waive his protection against double-jeopardy.

*Scholl Law Firn, P.L.L.C.*, by: *Scott A. Scholl*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.